# EXHIBIT C

# MASERATI NORTH AMERICA, INC.



### Dealer Retail Sales & Service Agreement

### and

### Standard Provisions

FNA0000007

# TABLE OF CONTENTS

Page

**DEALER RETAIL SALES & SERVICE AGREEMENT** ...................... i-iv

## STANDARD PROVISIONS

**ARTICLE 1 – Definitions** ........................................... 1-2

**ARTICLE 2 – Obligations of Maserati** .................................. 2
2.1   Sale of Maserati Products ........................................ 2
2.2   Support Services ................................................ 2
2.3   Offer to Meet with Dealer Representatives ........................... 2

**ARTICLE 3 – Terms and Conditions of Sales of Maserati Vehicles** ............ 2-6
3.1   Dealer's Purchase Price .......................................... 2
3.2   Allocation and Distribution of Vehicles .............................. 3
3.3   Financing the Purchase of Maserati Vehicles ......................... 3
3.4   Payment for Maserati Vehicles; Title ................................ 3
3.5   Grant of Security Interest; Execution of Security Agreement ............ 3
3.6   Method of Shipment of Maserati Vehicles ............................ 3
3.7   Diversions of Shipments .......................................... 3
3.8   Risk of Loss .................................................... 4
3.9   Transportation Damages or Loss ................................... 4
3.10  Changes in Specifications ......................................... 4
3.11  Failure of, or Delay in, Delivery .................................... 4
3.12  Federal, State and Local Taxes .................................... 4-5
3.13  Inventories; Demonstrators ........................................ 5
3.14  Changes in Price of Maserati Vehicles; Refunds ...................... 5
3.15  Incorporation of Maserati's Warranties in Dealer's Sales .............. 5
3.16  Labels ......................................................... 6

**ARTICLE 4 – Dealership Facilities** ..................................... 6
4.1   Quality of Dealership Facilities .................................... 6
4.2   Maintenance of Dealership Facilities ................................ 6
4.3   Relocation of Maserati Operations .................................. 6
4.4   Maserati Signs .................................................. 6
4.5   Maserati Stationery .............................................. 6

**ARTICLE 5 – Dealer Ownership, Management and Personnel** ............... 7-10
5.1   Identity of Owners, Officers and Dealer Operator ..................... 7
5.2   Changes in Dealer Operator or Ownership; Sale of Assets; Multiple Dealerships .......... 7-8
5.3   Authority and Ownership Interest of Dealer Operator .................. 8
5.4   Sales and Servicing Staff ......................................... 8
5.5   Appointment of Other Dealers ..................................... 8
5.6   Other Corporate Changes ......................................... 8
5.7   Right of First Refusal ............................................. 8-10

**ARTICLE 6 – General Requirements for Dealer's Maserati Operations** . . . . . . . . **11-12**
6.1    Conduct of Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.2    Business Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.3    Compliance with Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.4    Modification of Maserati Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.5    Compliance with Maserati's Recommendations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.6    Performance Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.7    Review of Customer Satisfaction Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.8    Maintenance of Accounting Systems; Sales Information . . . . . . . . . . . . . . . . . . . . . . . . . . .11
6.9    Access to Dealer's Premises and Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
6.10   Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**ARTICLE 7 – Sale and Promotion of Maserati Products** . . . . . . . . . . . . . . . . . . . **12-13**
7.1    Maserati Customer Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
7.2    Sales Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
7.3    Deposits and Trade-Ins . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
7.4    Dealer's Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
7.5    Notification to Maserati of Difficulty to Repair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
7.6    Dealer's Purchase of Maserati Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
7.7    Marketing and Sale of Non-Automotive Maserati Products . . . . . . . . . . . . . . . . . . . . . . . . . .13
7.8    Waiting Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**ARTICLE 8 – Customer Service** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13-14**
8.1    Importance of Service Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
8.2    Body Repair Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
8.3    Management and Training of Service Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
8.4    Service Department Facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8.5    Tools Used by Service Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8.6    Pre-Delivery Inspection and Servicing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8.7    Evaluation of Dealer's Service Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8.8    Performance of Warranty Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8.9    Warranty Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
8.10   Records of Warranty Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**ARTICLE 9 – Purchase and Inventory of Genuine Maserati Parts** . . . . . . . . . . . **15-16**
9.1    Inventory of Genuine Maserati Parts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.2    Condition of Parts Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.3    Price of Genuine Maserati Parts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.4    Incomplete Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.5    Return of Non-Conforming Genuine Maserati Parts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.6    Return of Specially Ordered Maserati Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.7    Delivery of Genuine Maserati Parts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
9.8    Dealer's Account with Maserati . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15-16
9.9    Representations as to Genuineness of Parts Used and Sold by Dealer . . . . . . . . . . . . . . . . .16

FNA0000009

**ARTICLE 10 – Capital and Operating Standards, Financial Statements and Reports . 16-17**
10.1  Capital and Operating Standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
10.2  Reports of Dealer's Sales and Inventory; Departmental Profitability . . . . . . . . . . . . . . . . . . .16
10.3  Maintenance of Books of Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
10.4  Monthly Financial Statements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
10.5  Yearly Financial Statements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
10.6  Confidentiality of Dealer Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
10.7  Access to Dealer's Premises and Auditing of Records  . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**ARTICLE 11 – Trademarks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18**
11.1  Use of Maserati Trademarks by Dealer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
11.2  Exclusive Ownership of Maserati Trademarks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
11.3  Use of Maserati Trademarks by Dealer Upon Termination of Dealer Agreement  . . . . . . . . . . .18
11.4  Use of Trademarks in Connection With Used Automobiles  . . . . . . . . . . . . . . . . . . . . . . . . .18

**ARTICLE 12 – Advertising and Merchandising  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18**
12.1  Contents of Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
12.2  Participation in Advertising Programs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
12.3  Sales Aids  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

**ARTICLE 13 – Indemnifications  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20**
13.1  Indemnification by Maserati . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18-19
13.2  Indemnification by Dealer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
13.3  Notification of Indemnification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19-20
13.4  Attorney's Fees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

**ARTICLE 14 – Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22**
14.1  Termination by Mutual Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
14.2  Termination by Dealer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
14.3  Termination Due to Expiration of Maserati's Status as Distributor of Maserati Products  . . . . . .20
14.4  Termination Due to Offer of New or Modified Dealer Agreement  . . . . . . . . . . . . . . . . . . . . .20
14.5  Termination for Cause  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20-22
14.6  Termination for Death or Disability of Owner or Dealer Operator . . . . . . . . . . . . . . . . . . . . .22
14.7  Termination for Failure to Enter Into or Fulfill the Terms of a Performance Agreement  . . . . . . .22

**ARTICLE 15 – Right of Succession  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24**
15.1  Continuation of this Agreement Upon Death or Permanent Disability . . . . . . . . . . . . . . . . . . .23
15.2  Successor Nominee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
15.3  Successor to Dealer in Event of Death  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
15.4  Succession and Maserati's Right of First Refusal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

**ARTICLE 16 – Business Relations After Termination  . . . . . . . . . . . . . . . . . . . . . . . . 24**

**ARTICLE 17 — Rights and Obligations Upon Termination of Agreement . . . . . . . 24-25**

17.1   Purchase of Dealer's Inventory of Maserati Products by Maserati . . . . . . . . . . . . . . . . . . . . . .24

17.2   Absence of Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

17.3   Delivery; Right to Take Inventory; Right of Offset . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

17.4   Customer Files and Product Literature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

17.5   Mutual Release and Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

**ARTICLE 18 — Miscellaneous Provisions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-28**

18.1   Notice of Failure to Act in Good Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.2   No Oral Agreements or Modifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.3   Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.4   Assignment of Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.5   Third Party Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.6   Dealer is Not an Agent of Maserati . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.7   Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.8   Waivers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

18.9   Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

18.10  Choice of Law; Dispute Resolution; Arbitration; Jurisdiction . . . . . . . . . . . . . . . . . . . . . . .27-28

      (a)      Non-Binding Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

      (b)      Mediation Panel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

      (c)      Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27-28

18.11  Withdrawal or Suspension of Supply of Maserati Vehicles . . . . . . . . . . . . . . . . . . . . . . . . .28

18.12  Maserati's Security Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

18.13  Anti-Theft Labels . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

18.14  Time of the Essence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

18.15  Information Maintained in Electronic Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

## Dealer Retail Sales & Service Agreement

This Dealer Agreement, effective as of the _30th_ day of _May_, 20_03_, is entered into by and between MASERATI NORTH AMERICA, INC., a Delaware corporation, having its principal place of business at 250 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 (hereinafter referred to as "Maserati") and _St. Louis Motorsports, LLC_ a _____ corporation;

(Formal Name of Dealer)        (State of Incorporation)

_Delaware_ limited liability company; _____ partnership;

(State of Formation)        (State of Formation)

_____ individual;

doing business as _Maserati St. Louis_ ;

(Trade Name)

_One Arnage Blvd._

(Street Address(es) of Dealership Facilities)

City _St. Louis_ State _MO_ Zip Code _63005_

(hereinafter referred to as "Dealer").

All of the terms which are defined in the Dealer Agreement Standard Provisions shall hereby become a part of this Dealer Agreement and, when used herein, shall have their respective meanings as set forth in such Dealer Agreement Standard Provisions. Unless the context indicates otherwise, the term "Agreement" shall hereinafter mean and be deemed to include, in addition to this Dealer Agreement, the Dealer Agreement Standard Provisions (the "Standard Provisions"), as such shall be amended from time to time, and any Performance Agreement which the parties may execute.

### Preamble

Maserati has the exclusive right in North America to distribute and to provide factory-approved warranty service for the motor vehicles, parts and accessories which are manufactured by Maserati S.p.A. or which bear the trademarks of Maserati S.p.A. and are sold by Maserati (hereinafter collectively referred to as "Maserati Products"). Maserati acknowledges that Maserati is newly introduced in North America, and that Dealer has undertaken a significant commitment of time and financial resources in order to open and operate Dealer's Maserati dealership.

Dealer recognizes that the continued success of Maserati in North America and, therefore, the protection of the interests of Maserati customers, dealers and Maserati also depends upon the establishment and maintenance of a network of dealers, properly located and efficiently managed to promote effectively the sale and servicing of Maserati Products. Dealer further recognizes that it is the objective of Maserati to ensure the success of its dealer network by selecting the most suitable dealer for each location.

In order for the general public, Maserati and each of its dealers to obtain the maximum benefit from the sale of Maserati Products, each dealer authorized by Maserati shall maintain facilities and personnel sufficient to meet the sales and service needs and expectations of the customers and potential customers of such products within Dealer's RMA. It is expected that each dealer will adopt and follow sound, ethical and effective business practices in order to fully develop and maintain the market for Maserati Products in such area. Towards that end, Dealer shall sell and service Maserati Products in conformity with reasonable policies and practices established from time to time by Maserati.

The purpose of this Agreement is to designate Dealer as an authorized retail dealer of Maserati who shall conduct a Maserati dealership at the location(s) approved by Maserati and to set forth in writing the duties and obligations of Maserati and Dealer in the sale to and by Dealer of Maserati Products, and the rights and responsibilities of Dealer in the management of the Maserati dealership pursuant to the provisions of this Agreement. By fully assuming such duties, obligations and responsibilities and through the mutual effort of Dealer and Maserati, it is anticipated that both parties will benefit from continued public goodwill and ensuing business success.

FNA0000012

Therefore, for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

## A. PURPOSE OF AGREEMENT

The purpose of this Agreement is to promote the sale of Maserati Products in a manner which maximizes retail customer satisfaction. Dealer shall not sell new Maserati Vehicles to any individual or entity other than bona fide retail customers or a designated lease company acting on behalf of bona fide retail customers. Sales to independent brokers and other persons who are not bona fide retail customers are inconsistent with Dealer's rights and obligations under this Agreement and would constitute material breaches of this Agreement.

## B. APPOINTMENT OF DEALER

Maserati hereby appoints Dealer as an authorized retail dealer of Maserati Products and grants Dealer the non-exclusive right to buy and sell Maserati Products in accordance with and subject to the provisions of this Agreement. Dealer hereby accepts such appointment and agrees to be bound by all of the terms and conditions of this Agreement. Dealer recognizes and agrees that its appointment as a dealer in Maserati Products does not confer upon it the exclusive right to deal in Maserati Products in any geographical area within which Dealer may sell or service Maserati Products, including but not limited to Dealer's RMA. Subject only to any applicable federal, state, provincial or local laws, ordinances or regulations, Maserati reserves the right to grant or confer rights and privileges concerning the sale and servicing of Maserati Products upon such other dealers as may be selected and approved by Maserati, whether located in the vicinity of Dealer's premises or elsewhere, as Maserati, in its sole and absolute discretion, may deem necessary or appropriate. Maserati acknowledges that Dealer has undertaken a significant commitment of time and financial resources to establish and operate its Dealership Facilities. Therefore, notwithstanding anything else contained in this Agreement, if Maserati decides to appoint, or to consider whether to appoint, another dealer in or near Dealer's market area, Maserati shall promptly notify Dealer thereof, and consult with Dealer as to (a) whether a new dealer should in fact be appointed in such market area and if so (b) whether Dealer should be appointed to provide such representation. Dealer and Maserati agree that Maserati reserves the right to grant or confer rights and privileges concerning the sale and servicing of Maserati Products.

## C. DEALER AGREEMENT STANDARD PROVISIONS

The Standard Provisions, entered into by Dealer and Maserati concurrently with the execution of this Dealer Agreement, are hereby made a part of this Dealer Agreement. Dealer hereby acknowledges receipt of the Standard Provisions and declares that it has examined and is fully familiar with the terms thereof and accepts them without reservation.

## D. DEALER'S OWNERSHIP AND MANAGEMENT

This Agreement is in the nature of a personal services contract between Maserati and Dealer. In order to induce Maserati to enter into this Agreement, Dealer makes the following representations and warranties, each of which shall be deemed to be independently material and to have been relied upon by Maserati, regardless of any investigation made or information obtained by Maserati:

(i) Dealer's Owners. The beneficial owners, record owners, members and partners, if any, (collectively "Owners"), of Dealer are as follows:

| Name and Residence Address of Beneficial Owners, Members and Partners | Social Security Numbers of Beneficial Owners, Members and Partners | Percentage of Beneficial Interest | Percentage of Time Active in Operation of Dealer's Maserati Business |
|---|---|---|---|
| James N. Mills 171 N. Bemiston Ave Clayton, MO 63105 | | 50% | 50% |
| Graham Hill 7743 Kingsbury Blvd. #1 St. Louis, MO 63105 | | 50% | 50% 100% |

FNA0000013

(ii) **Dealer's Officers.**  The following persons are Dealer's Officers:

| NAME | SS# | TITLE | % of Time Active in Operation of Maserati's Business |
|------|-----|-------|------------------------------------------------------|
| James N. Mills | Redacted | Chairman | 50% |
| Graham Hill | Redacted | President | ~~100%~~ 50% |
| James J. Mills | Redacted | General Manager | ~~100%~~ 50% |

(iii) **Dealer Operator.**  The following person shall exercise the function of a Dealer Operator ("Dealer Operator") and shall be in complete charge of Dealer's day-to-day Maserati Operations, with authority to make all operating decisions on behalf of Dealer with respect to Dealer's Maserati Operations:

| NAME | SS# | TITLE | % of Time Active in Operation of Maserati's Business |
|------|-----|-------|------------------------------------------------------|
| Graham Hill | | President | ~~100%~~ 50% |

(iv) **Dealer's Identification.**
Dealer's Federal Taxpayer Identification Number is: _____Redacted_____ ;
Dealer's Social Security Number is: _____.

Maserati is entering into this Agreement in reliance upon the above-mentioned representations.  Due to the importance that Maserati places on the identity, expertise, reputation, character, integrity, abilities, financial resources, personal and business qualifications and business philosophy of Dealer's Owners and Officers and of the Dealer Operator of Dealer, Dealer agrees that: (a) there will be no change in Dealer's Owners or Dealer Operator without the prior written consent of Maserati; (b) there will be no change in Dealer's name, identity, business organization or corporate structure without the prior written consent of Maserati; and (c) Dealer will give prompt written notice to Maserati of any change in Dealer's Officers, all in the manner set forth in the Standard Provisions of this Agreement.

**E. DEALER'S PREMISES**

Maserati hereby approves the location of the following Dealership Facilities:

(1) A showroom for Maserati Products at:

One Arnage Blvd.
St. Louis, MO  63005

(2) Service and Parts facilities for Maserati Products at:

One Arnage Blvd.
St. Louis, MO  63005

FNA0000014

Dealer shall conduct its Maserati Operations and keep Maserati Products at the above-mentioned Dealership Facilities only, and shall operate its business at such Dealership Facilities during the customary business hours of the trade in its surrounding community.

In the event that Dealer desires to: (a) change its principal place of business from the one set forth in this Agreement: (b) change the location of any of its Dealership Facilities; (c) establish any additional locations for either operating its business or storing Maserati Products; or (d) make any major change in the layout and appearance of any of its Dealership Facilities, it must first obtain the express written approval of Maserati, all in the manner set forth in the Standard Provisions of this Agreement.

In addition, the information set forth on Schedule A hereof, including, but not limited to, other dealerships and business locations of Dealer, is incorporated in this Agreement and made a part hereof.

## F. EXCLUSION OF WARRANTIES

EXCEPT AS OTHERWISE PROVIDED BY LAW, THE WRITTEN MASERATI WARRANTIES ARE THE ONLY WARRANTIES APPLICABLE TO MASERATI PRODUCTS.  EXCEPT FOR ITS LIMITED LIABILITY UNDER SUCH WRITTEN WARRANTIES, MASERATI AND MASERATI S.P.A. DO NOT ASSUME ANY OTHER WARRANTY, OBLIGATION OR LIABILITY WITH RESPECT TO MASERATI PRODUCTS.  DEALER IS NOT AUTHORIZED TO CREATE, MODIFY OR ASSUME ADDITIONAL WARRANTY OBLIGATIONS OR LIABILITY ON BEHALF OF MASERATI OR MASERATI S.P.A. ANY SUCH UNAUTHORIZED CREATION, MODIFICATION OR ASSUMPTION WITHOUT THE PRIOR WRITTEN CONSENT OF MASERATI SHALL BE THE SOLE RESPONSIBILITY OF DEALER. AS TO DEALER, THE WRITTEN WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.   MASERATI DISCLAIMS ANY RESPONSIBILITY OR LIABILITY TO DEALER FOR COMMERCIAL LOSSES BASED ON NEGLIGENCE OR MANUFACTURER STRICT LIABILITY, OR ANY OTHER THEORY OF LIABILITY OR RECOVERY.

## G. TERM

This Agreement shall continue in full force and effect and shall govern all relations and transactions between Dealer and Maserati until continued by the signing of a new Agreement or terminated in accordance with applicable law or the provisions of this Agreement.

## H. EXECUTION OF AGREEMENT

This Agreement shall not become effective until it is signed by a duly authorized officer or member of Dealer, if Dealer is a corporation or limited liability company; or by one of the general partners of Dealer, if Dealer is a partnership; or by the aforementioned individual, if Dealer is an individual, and thereafter countersigned by a duly authorized Executive Officer of Maserati.

## I. TERMINATION OF PRIOR AGREEMENTS

The execution of this Agreement by Dealer and Maserati terminates and supersedes all prior written or oral agreements between them relating to the subject matter hereof, and furthermore releases each of them from any claims, liabilities, demands and causes of action held by the other accruing out of or from the provisions of such written or oral agreements, except with respect to any trade indebtedness which may be owing by either Maserati or Dealer to the other, and except that this Agreement shall not operate to cancel any of Dealer's unfilled orders with Maserati for any Maserati Products placed with Maserati pursuant to the provisions of any agreement terminated or superseded by this Agreement.

## J. MODIFICATION OF AGREEMENT

No representative of Maserati shall have the authority to waive any of the provisions of this Agreement or to make any amendment or modification of or any other change in, addition to or deletion from any portion of this Agreement, or to enter into any other agreement on behalf of Maserati which imposes any obligation on either Maserati or Dealer which is not specifically imposed by this Agreement, unless such waiver, amendment, modification, change, addition, deletion or agreement is made in writing and signed by a duly authorized Executive Officer of Maserati and Dealer, as such is set forth in Article H of this Agreement.

FNA0000015

## DEALER AGREEMENT STANDARD PROVISIONS

The following Standard Provisions of the Maserati North America Dealer Retail Sales and Service Agreement, as the same may be amended, superseded or substituted from time to time (the "Standard Provisions") are expressly made a part of and are incorporated by reference into the Maserati North America Dealer Retail Sales and Service Agreement (the "Dealer Agreement") and shall apply to and govern the transactions, dealings and relations between Maserati North America, Inc. ("Maserati") and Dealer with the same force and effect as if set forth in full in the Dealer Agreement. Unless otherwise indicated, the term "Agreement" shall mean the Dealer Agreement and the Standard Provisions.

## ARTICLE 1 -- DEFINITIONS

As used in the Agreement, the following terms shall have the following meanings:

1.1   Capital and Operating Standards includes, without limitation, the reasonable minimum levels of cash, net working capital, net worth and debt-to-equity ratios, sales ratios, inventory levels and wholesale credit standards, as Maserati may establish from time to time.

1.2   Corporate Identification Program means the standards Maserati may establish from time to time for use and display of Maserati Trademarks at Dealership Facilities and in connection with the authorized sale and servicing of Maserati Products.

1.3   Dealer means the retail dealer authorized to sell new and unused Maserati Products, who has been appointed by Maserati pursuant to a Dealer Agreement between Maserati and such retail dealer.

1.4   Dealer Operator means the person identified in Article D (iii) of the Dealer Agreement, or his/her successor.

1.5   Dealership Facilities means the real property and buildings at which, and out of which, Dealer is authorized to conduct its Maserati sales, service and parts operations.

1.6   Executive Officer means the President or any Vice President of Maserati.

1.7   Facilities/Personnel Guide means the standards Maserati may issue from time to time establishing minimum staffing requirements for its authorized dealers and minimum size and layout of, and allocation of space in, Dealership Facilities. The Facilities/Personnel Guide is incorporated into and expressly made a part of this Agreement as if set forth herein in full.

1.8   Maserati Customer Events means customer-related service and marketing events as Maserati may designate from time to time.

1.9   Maserati means Maserati North America, Inc., a Delaware corporation.

1.10   Maserati Operations means all of Dealer's activities relating to the sale, repair or servicing of Maserati Products and the rendering of customer services on behalf of owners and prospective owners of Maserati Products and all other operations and activities of Dealer governed by this Agreement.

1.11   Genuine Maserati Parts means all parts, accessories or equipment for Maserati Vehicles manufactured, sold and/or licensed by Maserati S.p.A. or Maserati and supplied to Dealer by Maserati or by a third-party designated in writing by either Maserati or Maserati S.p.A.

1.12   Maserati Products means any Maserati Vehicles or Genuine Maserati Parts.

1.13   Maserati S.p.A. means a corporation organized under the laws of the Republic of Italy which is the manufacturer, licensee or authorized supplier of Maserati Products.

1.14   Maserati Signs means any display of the word "Maserati", the marks known as the Maserati "Trident" or "Tridente" and/or any other Maserati Trademark now, or at any time hereafter, used or claimed by Maserati S.p.A. or Maserati.

1.15   Maserati Trademarks means the word "Maserati", the marks known as the "Trident" or "Tridente" trademark, and any other trademark, service mark, trade name or trade dress now or at any time hereafter used or claimed by Maserati S.p.A. or Maserati.

1

FNA0000016

1.16 Maserati Vehicles means any new automobile manufactured by Maserati S.p.A. and bearing any of the trademarks of Maserati S.p.A. and sold and distributed by Maserati.

1.17 Performance Agreement means a written agreement entered into by and between Maserati and Dealer, in accordance with which Dealer agrees to improve its sales and/or servicing of Maserati Products, customer satisfaction with its Maserati Operations or to construct, renovate and/or relocate its Dealership Facilities, make changes in its management and/or personnel, increase capital investment or otherwise modify its Maserati Operations.

1.18 Relevant Market Area ("RMA") means the geographical territory comprising Dealer's primary area of sales, service and customer satisfaction responsibility, as Maserati may define from time to time for purposes of measuring Dealer's performance.

## ARTICLE 2 – OBLIGATIONS OF MASERATI

2.1 Sale of Maserati Products. Subject to availability, Maserati agrees to sell and deliver Maserati Products to Dealer in accordance with the terms and conditions of this Agreement, provided, however, that Maserati shall have no obligation to supply and Dealer shall not be entitled to receive Maserati Products which exceed Dealer's ability to purchase, store or display such Maserati Products at the Dealership Facilities, or to sell or service such Maserati Products within its RMA.

2.2 Support Services. Maserati will use reasonable commercial efforts to assist Dealer in the conduct of Dealer's Maserati Operations and will provide the following support services:

   (a) Conduct training courses for Dealer's personnel (it being, however, Dealer's obligation to (i) insure that its personnel attend such courses and (ii) pay for the cost of such training to the extent required by Maserati of its Dealers);

   (b) Prepare and disseminate sales, service, parts and warranty literature relating to Maserati Products, policies and procedures;

   (c) Provide communications and/or promotional campaigns from time to time for Maserati Products; and

   (d) Develop and convey recommendations and evaluations to assist Dealer in the conduct of its Maserati Operations.

Maserati may also provide additional support services at its discretion. Dealer shall contribute to the cost of any support services provided directly or indirectly by Maserati if Maserati, in the reasonable exercise of its business judgment, deems such contribution to be fair and equitable. The amount of such contribution shall be within the sole discretion of Maserati.

2.3 Offer to Meet with Dealer Representatives. For as long as Maserati offers Dealers any monetary incentives in connection with customer satisfaction (e.g., under its then current customer satisfaction program, if any), Maserati will offer to meet and consult with Dealer representatives on an annual basis, and if accepted by Dealer representatives, shall meet with such representatives an annual basis, to discuss ways to improve Maserati's then current customer satisfaction program.

## ARTICLE 3 – TERMS AND CONDITIONS OF SALE OF MASERATI VEHICLES

3.1 Dealer's Purchase Price. Maserati will sell Maserati Vehicles to Dealer at such prices and upon such terms and conditions as it may establish from time to time. In addition, Dealer may, from time to time, act as Maserati's representative for the limited purpose of facilitating the leasing of certain Maserati Vehicles by Maserati or its affiliates or designees to bona fide retail customers approved by Maserati, its affiliates or designees. Dealer shall be responsible for collection and payment of any and all applicable sales taxes, use taxes, excise taxes, luxury taxes and other governmental charges imposed, levied, based upon or as a result of the sale or lease of Maserati Vehicles by Maserati to or through Dealer or by Dealer which have not previously been paid by Maserati.

2

3.2 <u>Allocation and Distribution of Vehicles.</u> Maserati and Dealer recognize and acknowledge that there have been and may be times when demand for Maserati Vehicles in North America exceeds available supply and must, therefore, be allocated among Maserati's authorized dealers. In making sales and deliveries to its authorized dealers in such circumstances, Maserati will at all times endeavor to provide a fair, reasonable and equitable allocation and distribution of Maserati vehicles among Dealer and Maserati's other dealers. Dealer expressly acknowledges and agrees that its receipt of a sold order, or its submission of such a sold order to Maserati, does not entitle Dealer to allocation or receipt of a vehicle from Maserati to fill such order.

3.3 <u>Financing the Purchase of Maserati Vehicles.</u> Dealer shall continuously maintain floor plan financing exclusively for the purchase of Maserati Vehicles in an amount and with a financing institution reasonably acceptable to Maserati. Maserati will, upon request from Dealer, execute Maserati's standard form of vehicle repurchase agreement with Dealer's financing institution, if such an agreement is required in order for Dealer to secure floor plan financing in accordance with this paragraph.

3.4 <u>Payment for Maserati Vehicles; Title.</u> Payment to Maserati for Maserati Vehicles shall be made by Dealer by such means as may be specified from time to time by Maserati which means may include cash drafting or wire or electronic transfer (such as Automated Clearing House ("ACH")), to an account specified in writing by Maserati. Such payment will be made by electronic debit or, in the alternative, such payment is due upon presentation of Maserati's cash draft for said Maserati Vehicles to Dealer's financial institution and shall include any charges referred to in Article 3.1 above invoiced by Maserati. If timely payment is not received by Maserati, Dealer shall pay interest to Maserati at two percent (2%) over the prime rate of interest for the period of time in which payment is delinquent, together with all reasonable collection charges incurred by Maserati including, but not limited to, reasonable attorneys' fees and court costs. Notwithstanding anything to the contrary herein, or in any other agreement, or course of performance, between Maserati and Dealer, title and ownership to Maserati Vehicles shall remain with Maserati until Maserati has received payment in full for such Maserati Vehicles. Maserati shall have the right and Dealer hereby grants to Maserati the right to retake possession of and resell each Maserati Vehicle until receipt of such payment.

3.5 <u>Grant of Security Interest; Execution of Security Agreement.</u> As security for the due and punctual payment by Dealer of all amounts now or hereafter due to Maserati, including without limitation, amounts now or hereafter due under this Agreement and the performance by Dealer of all its obligations hereunder and pursuant to any Performance Agreement, Dealer hereby grants to Maserati, subject only to any prior perfected secured creditor's express security interest, a security interest in all of Dealer's right, title and interest in and to this Agreement and the franchise represented hereby (collectively referred to herein as the "Collateral"). Dealer will execute and deliver to Maserati all applicable state Uniform Commercial Code forms provided by Maserati to perfect Maserati's security interest in the Collateral, which forms may be filed by Maserati in the manner contemplated by applicable state Uniform Commercial Code. Dealer further agrees to execute and deliver from time to time one or more separate security agreements as may be required by Maserati to further evidence and secure Maserati's security interest in the Collateral. Notwithstanding the foregoing provisions of this paragraph, Maserati agrees to provide Dealer with written notice of any matter that may give rise to a right by Maserati to foreclose on such interest and a thirty (30) day cure period prior to foreclosing on any interest created in this Article 3.6. Maserati shall not foreclose on such interest if it is cured within the 30 day time period referenced in the immediately preceding sentence.

3.6 <u>Method of Shipment of Maserati Vehicles.</u> Maserati reserves the right to arrange for shipment of Maserati Vehicles from the point of distribution to Dealer's place of business by whatever mode of transportation and by whatever route Maserati may select. All shipping charges for Maserati Vehicles will be borne by Dealer.

3.7 <u>Diversions of Shipments.</u> If diversions of shipments are made upon Dealer's request or are made by Maserati as a result of Dealer's failure or refusal, for any reason, to accept or make payments for shipments made pursuant to Dealer's offers to purchase, Dealer agrees to pay the additional charges and expenses incident to such diversions but in no event shall Dealer be required to pay Maserati an amount in excess of charges or expenses incident to returning shipments to their original shipping point.

FNA0000018

3.8 <u>Risk of Loss.</u> Any Maserati Vehicle sold by Maserati to Dealer shall be at Dealer's risk and peril from the time of its delivery to Dealer or Dealer's representative, regardless of whether payment in full therefor has been made to Maserati. For purposes of this Agreement, and notwithstanding anything to the contrary herein, "delivery" of any Maserati vehicle shall be at the point of origin of shipment from Maserati to Dealer.

3.9 <u>Transportation Damages or Loss.</u> In the event any Maserati Product sold by Maserati to Dealer is damaged prior to delivery to Dealer, or is determined to contain a non-conformity prior to sale by Dealer, Dealer shall, upon notification to Maserati in accordance with the provisions of any policy regarding notice of damage established by Maserati from time to time and in accordance with instructions from Maserati, repair such damage or non-conformity or take such other action as Maserati may direct. Maserati will reimburse or credit Dealer for any such work performed on a Maserati Product at Maserati's request in accordance with applicable policies and procedures in effect at the time such repairs are made; provided, however, that Maserati will not reimburse or credit Dealer for any such work performed as a result of damages caused by Dealer or one of Dealer's representatives. In the event of any damage or non-conformity of the nature referred to in the first sentence of this Article 3.9, Maserati may at its discretion reimburse or credit Dealer for repair of such damage or non-conformity (including a credit for floorplan financing to the extent that repair of the Maserati Product prevents Dealer from selling the product for a period in excess of 30 days) or for loss of the vehicle upon Maserati's receipt of Dealer's written assignment of its claim as the insured so as to enable Maserati to resolve fully the claim with the common carrier or any party which has insured the risk of such damage or loss. In addition, in the event of total loss of Maserati Product, Maserati may in its discretion rescind the sale of the Maserati Product and supply Dealer with a comparable product, supply permitting, before resolution of any claim for such loss.

3.10 <u>Changes in Specifications.</u> Maserati Products will be delivered by Maserati to Dealer in accordance with standards applicable at the time of their shipment by Maserati. Maserati and Dealer recognize that Maserati and/or Maserati S.p.A. shall have the right, without prior notice or limitation, at any time and from time to time, in their sole discretion, to make changes or modifications in the design specifications of Maserati Products. No change in Maserati Vehicles shall be considered a model year change unless so specified by Maserati S.p.A. Maserati shall have no obligation to Dealer to make such change or modification with respect to Maserati Products previously delivered to or ordered by Dealer or to make any refund or other adjustment for any Maserati Products previously purchased by Dealer or being imported, manufactured or sold, whether or not the price of such Maserati Products is affected thereby.

3.11 <u>Failure of, or Delay in, Delivery.</u> Maserati shall have no liability whatsoever to Dealer for failure to deliver or for delay in making delivery to Dealer of Maserati Vehicles offered to and accepted by Dealer if such failure or delay is brought about by causes other than willful or grossly negligent conduct of Maserati, such as any event in the nature of force majeure, including without limitation, acts of God, acts of any government, foreign or civil wars, riots, interruptions of navigation, shipwrecks, strikes, lockouts, other labor troubles, embargoes, blockades, fires, explosions, lack of materials, or failure of Maserati S.p.A. or of any other supplier of Maserati in making delivery. The obligations of either party with respect to the sale or delivery of such Maserati Vehicles shall be suspended during any such contingency, without liability to the other for direct or consequential damages.

3.12 <u>Federal, State and Local Taxes.</u> With regard to each purchase of Maserati Products, Dealer represents and warrants that:

   (a) Such Maserati Products are being purchased from Maserati by Dealer for resale or lease to bona fide retail customers in the ordinary course of Dealer's business;

   (b) Dealer has complied with all of the applicable provisions of federal, state, provincial and local laws prerequisite to the collection and payment by Dealer of all sales, use, excise and luxury taxes and other governmental or municipal charges applicable to all such resale transactions; and

   (c) Dealer has furnished or will, upon demand, furnish to Maserati all resale certificates or similar documents required to perfect an exemption from any applicable sales, use or other tax.

4

In the event that any Maserati Products are put to taxable use by Dealer or are in fact purchased by Dealer for purposes other than resale in the ordinary course of Dealer's business, Dealer shall make timely return and payment to the appropriate taxing authorities, as required by Article 3.1, with respect to Maserati Vehicles, and Article 9.3, with respect to Genuine Maserati Parts, of all applicable sales, use, luxury and excise taxes, and other governmental charges imposed or levied or based upon the sale of such Maserati Products by Maserati to Dealer, and Dealer shall hold Maserati harmless from any and all claims and demands which may be made by such taxing authorities against Maserati with respect thereto.

3.13   Inventories; Demonstrators.

    (a)   Subject to availability, Dealer shall acquire and maintain a representative supply of Maserati Vehicles to satisfactorily meet Dealer's sales potential in the Dealer's RMA, as determined by reasonable criteria including, but not limited to, those factors used to evaluate Dealer's sales performance, as set forth in Article 7.2 of this Agreement.

    (b)   Dealer shall also have available, whenever reasonably possible, for purposes of demonstration, a number of Maserati Vehicles which Maserati reasonably believes is sufficient to conduct all demonstrations during the selling process, such Maserati Vehicles to remain at all times in first-class operating and cosmetic condition.

3.14   Changes in Price of Maserati Vehicles; Refunds.   The parties understand and agree that periodic fluctuations in the prices of Maserati Vehicles are to be anticipated. Maserati will use reasonable commercial efforts to give Dealer advance notice of any price increases, but this may not always be possible. In the event the price of any Maserati Vehicle which has already been allocated to Dealer is increased sixty (60) days or more before the vehicle is received by Dealer, Dealer shall pay the increased price. In addition, if the price of any new model year vehicle which has already been allocated to Dealer is increased at any time before the vehicle is received by Dealer, Dealer shall pay the increased price. If the manufacturer's suggested retail price on any Maserati Vehicle in Dealer's stock is reduced, Maserati will refund or credit to Dealer the difference, if any, between the reduced dealer price and the price actually paid by Dealer, net of any applicable rebates or allowances. Maserati shall make such refunds or give such credits only if Dealer submits written application therefor, on a form or forms furnished by Maserati, within thirty (30) days from the date Dealer becomes eligible to receive such refund or credit. Each application for a refund or credit must be supported by evidence satisfactory to Maserati. Maserati reserves the right to credit Dealer's account with Maserati or to pay any refund on any Maserati Vehicle for which application for refund or credit is made by Dealer and accepted by Maserati under this paragraph to any financing institution which financed the purchase from Maserati of such Maserati Vehicle and which retains a lien on or an ownership interest therein.

3.15   Incorporation of Maserati's Warranties in Dealer's Sales.   Maserati will keep Dealer informed of the warranty or warranties applicable to Maserati Products. Dealer will ensure that such warranty or warranties, in the form prepared and disseminated by Maserati, are included in each agreement for the sale of such Maserati Vehicles by Dealer, to the extent applicable, and will furnish a copy of such warranty or warranties to the customer upon delivery of any such Maserati Vehicle. EXCEPT AS OTHERWISE PROVIDED BY LAW, THE WRITTEN MASERATI WARRANTIES ARE THE ONLY WARRANTIES APPLICABLE TO MASERATI PRODUCTS. EXCEPT FOR ITS LIMITED LIABILITY UNDER SUCH WRITTEN WARRANTIES, MASERATI AND MASERATI S.P.A. DO NOT ASSUME ANY OTHER WARRANTY, OBLIGATION OR LIABILITY WITH RESPECT TO MASERATI PRODUCTS. DEALER IS NOT AUTHORIZED TO CREATE, MODIFY OR ASSUME ADDITIONAL WARRANTY OBLIGATIONS OR LIABILITY ON BEHALF OF MASERATI OR MASERATI S.P.A. ANY SUCH UNAUTHORIZED CREATION, MODIFICATION OR ASSUMPTION WITHOUT THE PRIOR WRITTEN CONSENT OF MASERATI SHALL BE THE SOLE RESPONSIBILITY OF DEALER. AS TO DEALER, THE WRITTEN WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. MASERATI DISCLAIMS ANY RESPONSIBILITY OR LIABILITY TO DEALER FOR COMMERCIAL LOSSES BASED ON NEGLIGENCE OR MANUFACTURER STRICT LIABILITY, OR ANY OTHER THEORY OF LIABILITY OR RECOVERY.

FNA0000020

3.16 Labels. If any Maserati Vehicle has been delivered to Dealer without a label, or with an incorrect or incomplete label affixed thereto pursuant to the Federal Automobile Information Disclosure Act, 15 U.S.C. §1232, as amended, Dealer will notify Maserati of such finding. Thereafter, Maserati shall give Dealer instructions with respect to affixing, correcting or completing such label and Dealer agrees that it will comply with such instructions.

## ARTICLE 4 – DEALERSHIP FACILITIES

4.1 Quality of Dealership Facilities. Dealer acknowledges and agrees that attractive, well-maintained and conveniently located Dealership Facilities, consistent in design and decor with, and appropriate for the presentation of specialized, high-performance, luxury sports cars and sedans, are essential to the fulfillment of Dealer's obligations under this Agreement. Dealer agrees that, subject to local zoning ordinances and laws, its Dealership Facilities must continuously comply with Maserati's Corporate Identification Program and Facilities/Personnel Guide for a dealership of the relevant size.

4.2 Maintenance of Dealership Facilities. Dealer agrees to maintain and enhance its Dealership Facilities in accordance with Maserati's reasonable recommendations or as a result of increases in the volume of sales and service business conducted by Dealer.

4.3 Relocation of Maserati Operations. Dealer agrees that it will not relocate all or any part of its Maserati Operations unless and until it has first presented to Maserati such information as Maserati deems necessary to evaluate the proposed new site for such Maserati Operations and has secured from Maserati its prior express written consent to such relocation. Dealer understands that in evaluating any proposed site, Maserati will consider various factors, including, but not limited to, the adequacy of the site for a dealership of the size contemplated, the convenience and accessibility of the site to existing and potential Maserati owners and the type and quality of residential buildings and commercial enterprises located in the general area adjacent to and surrounding the site. Maserati will conduct its evaluation of any such proposed site as expeditiously as possible and will use reasonable commercial efforts to complete such evaluation within ninety (90) days after it has received all of the information it requires to make such evaluation. Maserati will approve the proposed relocation only if, based upon all the relevant factors, Maserati in the exercise of its reasonable business judgment considers the proposed relocation to be in the best interest of Maserati, Dealer, other authorized Maserati dealers and existing and potential Maserati owners in the RMA in which Dealer is located.

4.4 Maserati Signs. Subject to applicable local zoning ordinances and laws, Dealer agrees to erect or install at, around or on Dealer's Facility conspicuous Maserati Signs in such number, style and locations as Maserati shall reasonably require in accordance with a sign survey of the Dealership Facilities to be conducted by or on behalf of Maserati and/or in accordance with the Corporate Identification Program. In the event that Dealer transfers its business or a portion thereof to another location or upon termination of this Agreement, Dealer shall forthwith remove all Maserati Signs and other references to Maserati Products displayed at, around or on the prior location. Dealer shall not, in connection with its Maserati business, exhibit any Maserati Sign or any other sign, marking or display to which Maserati objects in writing.

4.5 Maserati Stationery. Dealer shall use stationery and business forms in connection with its Maserati Operations which incorporate Maserati Trademarks conforming to directives, policies and recommendations of Maserati including, but not limited to the Corporate Identification Program. Maserati Trademarks and any pictorial representation of Maserati automobiles appearing on such stationery and business forms shall be printed in the uniform style as approved by Maserati. Dealer shall not use any stationery, business forms or other printed materials if the use thereof is objected to by Maserati in writing.

6

## ARTICLE 5 — DEALER OWNERSHIP, MANAGEMENT AND PERSONNEL

5.1 Identity of Owners, Officers and Dealer Operator.  This Dealer Agreement is in the nature of a personal services contract between Maserati and Dealer. Maserati enters into this Dealer Agreement in express reliance upon, and in consideration of, the identity, expertise, reputation, character, integrity, abilities, financial resources, personal and business qualifications and experience and business philosophy of the owners, officers and Dealer Operator of Dealer. Dealer recognizes that Maserati has entered into this Dealer Agreement on the basis of and relies upon the representations concerning the ownership and management of Dealer contained in the Dealer Agreement and any application therefor.

5.2 Changes in Dealer Operator or Ownership: Sale of Assets: Multiple Dealerships.

(a) Dealer expressly recognizes and acknowledges that the identity, expertise, reputation, character, integrity, abilities, financial resources, personal and business qualifications and experience and business philosophy of the owners and Dealer Operator of Maserati's authorized dealers is of vital importance and significance to Maserati in its efforts to achieve and maintain a unique level of retail representation for Maserati Products. Consequently, in the event Dealer or its owners propose to change the Dealer Operator or the ownership of Dealer in any way, including but not limited to any transfer of any equity interest, grant of voting rights, merger, division, recapitalization, reorganization or otherwise, or to sell any material assets used in its Maserati Operations, other than in the ordinary course of business (any of the foregoing referred to herein as an "Ownership or Dealer Operator Change"), Dealer will advise Maserati in writing not less than sixty (60) days prior to entering into any binding contractual agreement for an Ownership or Dealer Operator Change. Maserati shall have the right in its reasonable discretion to approve or disapprove any proposed Ownership or Dealer Operator Change. Subject to and without limiting the rights provided for in Article 5.7, Maserati will not unreasonably withhold its approval of any Ownership or Dealer Operator Change proposal provided by Dealer to it in a timely manner. In deciding whether or not to approve an Ownership or Dealer Operator Change, Maserati will consider whether and to what extent any proposed new owners or Dealer Operator have prior experience in the management of luxury car dealerships and, in particular, their knowledge, understanding and experience of Maserati Products and Maserati customers. In evaluating any Ownership or Dealer Operator Change proposal by Dealer, Maserati will also consider all other relevant factors concerning the proposed new owners or Dealer Operator, including but not limited to those factors set forth in this Article 5.2(a). Maserati will not, however, be obligated to review or approve any Ownership or Dealer Operator Change that has not been proposed in accordance with this Agreement, or which has been effectuated (or sought to be effectuated) prior to full notification to and approval by Maserati. Unless Maserati elects to exercise its Right of First Refusal in accordance with Article 5.7, Maserati will notify Dealer in writing of its decision with respect to any timely proposal within sixty (60) days (thirty (30) days in the case of a change in Dealer Operator only) after Maserati has received all of the information requested by Maserati, in accordance with the requirements of this Article 5.2, concerning the proposal. Maserati agrees to request any such information in a prompt manner under the circumstances. Nothing herein shall prevent Dealer from terminating Dealer Operator "for cause" provided that (i) notice of such termination, and the grounds therefor, are promptly provided to Maserati, (ii) interim arrangements reasonably acceptable to Maserati are made for the day-to-day management of Dealer and (iii) a successor Dealer Operator is appointed in a timely manner and in accordance with the terms of this Agreement.

(b) The preceding Article notwithstanding, Maserati shall have no obligation to review or approve any Ownership or Dealer Operator change if Maserati is notified thereof after Maserati has already notified Dealer (in accordance with the applicable provisions of this Agreement) of its intention to terminate this Agreement pursuant to Article 14, unless and until a final determination has been made (after exhaustion of all appeals) that said notice of termination was invalid.

(c) Dealer, with Maserati's express prior written approval, may own and operate more than one Maserati Dealership if Dealer complies with such policies as Maserati may promulgate from time to time to promote competition among Maserati dealers, and between Maserati dealers and dealers in competing line makes and to avoid an excessive concentration of retail sales of Maserati Products in

7

any person or entity or group of related persons or entities, as well as standards regarding Dealer's financial status, Dealership Facilities, customer satisfaction and sales and service performance. At Maserati's request, Dealer agrees to enter into an agreement with Maserati limiting the number of authorized Maserati dealerships and/or the percentage of retail sales of Maserati Vehicles that Dealer (or any related person or entity) may control at any one time through more than one dealership.

5.3 **Authority and Ownership Interest of Dealer Operator.** Dealer has designated in the Dealer Agreement a Dealer Operator with full managerial authority and responsibility for the operations of Dealer. The Dealer Operator shall devote substantial time and attention to the management of Dealer; shall have full authority to make decisions and act on behalf of Dealer; and shall have, or be entitled to acquire, not less than a 10% interest in Dealer.

5.4 **Sales and Servicing Staff.** Dealer acknowledges and agrees that maintaining a stable, experienced sales, service and parts staff is essential to the proper representation of Maserati Products. Dealer will employ in all managerial and technical positions the number of individuals required by the Maserati Facilities/Personnel Guide, as the same may be amended, superseded or substituted from time to time. Each such individual shall be experienced in the sale and/or servicing of luxury and/or Maserati products or must be expeditiously trained in such sale and/or servicing. Dealer expressly agrees that all personnel engaged in Dealer's Maserati Operations must attend all applicable training courses offered by Maserati.

5.5 **Appointment of Other Dealers.** Subject to any applicable state or provincial statutes, Dealer acknowledges that Maserati shall have complete discretion to appoint such other Maserati dealers as Maserati shall deem necessary or desirable.

5.6 **Other Corporate Changes.** Dealer expressly recognizes and acknowledges that there will be no change in Dealer's identity, business, organization, corporate structure or the name under which Dealer conducts its Maserati Operations, without the prior written consent of Maserati (which consent Maserati shall not unreasonably withhold), subject to Article 5.2(a), and any other rights of Dealer under this Agreement.

5.7 **Right of First Refusal.** Dealer agrees that this Agreement is in the nature of a personal services contract between Dealer and Maserati. While Maserati acknowledges that Dealer has the right to sell or otherwise transfer the equity interests and/or assets of Dealer, subject to Maserati's right of review and approval as provided in this Agreement, Dealer acknowledges and agrees that such right is also subject to this Section 5.7. Subject to Article 15.4 (regarding the Right of Succession) and Article 5.2 of this Agreement, should Dealer or its owners propose any Majority Ownership Change (as defined below), Maserati shall have a right to purchase the equity interests and/or assets subject to the proposed Majority Ownership Change, including any leasehold interest or realty of the dealership that is subject to the proposed Majority Ownership Change (the "Offered Interest"), on the same terms and subject to the conditions set forth in the agreement pursuant to which the Majority Ownership Change is to be made, and in accordance with this Article 5.7, unless Dealer and Maserati agree in writing to other terms. For purposes of this Agreement, a "Majority Ownership Change" means any sale or transfer of a majority ownership interest (whether equitable or voting) in Dealer, whether by transfer of any equity interests, grant of voting rights, merger, division, recapitalization or reorganization, or sale or transfer of all or substantially all the assets used in Dealer's Maserati operations; provided, however, that in no event shall a Majority Ownership Change include (a) any sale or transfer to any "immediate family member" of any of Dealer ("immediate family member" consisting of any father, mother, brother, sister, son, daughter, grandson, granddaughter, or spouse of an Owner of Dealer), but such transfer shall be subject to the provisions of Article 15.4; or (b) any sale or transfer effected solely for internal corporate purposes (meaning for this purpose of this Agreement any sale or transfer of equity interests or assets where, following such sale or transfer, ownership of Dealer shall remain substantively unchanged), but such transfer shall be subject to the provisions of Article 5.2.

(a) Dealer's right to complete any proposed Majority Ownership Change is also subject to Maserati's right to approve or disapprove the proposed Majority Ownership Change in accordance with Article 5.2 of this Agreement.

FNA0000023

(b) Maserati shall request, promptly under the circumstances, all information necessary for Maserati to evaluate the proposed Majority Ownership Change. Maserati must notify Dealer of its decision to exercise its Right of First Refusal within forty-five (45) days after Maserati receives all information (requested in accordance with the preceding sentence) reasonably necessary for Maserati to evaluate the proposed Majority Ownership Change. If Maserati exercises its Right of First Refusal and purchases or assigns the Offered Interest in accordance with this Article 5.7, Dealer shall have no further right to dispose of or otherwise transfer the Offered Interest, except to Maserati or its assignee, provided, however, in the event of an assignment Maserati shall guarantee to Dealer and Dealer's Owners full payment and performance of all terms and conditions for purchase of the Offered Interest (including the payment of the full amount of the purchase price).

(c) Dealer shall, upon request, provide to Maserati all documents relating to the proposed Majority Ownership Change, including, without limitation, those reflecting any other agreements or understandings between the parties to the transfer agreement.

(d) If, upon review of the materials submitted to it in connection with the proposed Majority Ownership Change, Maserati, in the exercise of its reasonable business judgment, determines that the proposed Majority Ownership Change is not "bona fide," Maserati shall promptly notify Dealer thereof in writing, setting forth the basis for Maserati's contention. If Dealer disputes such contention, Dealer shall notify Maserati in writing within ten (10) days of receiving notice thereof from Maserati, in which case the sole method for determining whether the proposed Majority Ownership Change is bona fide shall be through binding arbitration conducted before a single arbitrator of the American Arbitration Association ("AAA") in accordance with AAA's rules and procedures, except as modified by this Article 5.7(d) and Article 5.7(e) (the "Arbitration"). The Arbitration shall take place in the metropolitan area where the Dealership Facilities are located. Dealer and Maserati agree that each shall use its best efforts to conduct the Arbitration as promptly as possible.

(e) The proposed Majority Ownership Change shall be deemed conclusively bona fide unless the Arbitrator determines by a preponderance of the evidence that the proposed Majority Ownership Change is a sham transaction that was created by Dealer to induce Maserati to exercise its Right of First Refusal, in which case it shall be deemed conclusively non bona fide. Maserati shall have the burden of proof with respect to its contention that the proposed Majority Ownership Change is non bona fide. If the Arbitrator determines, in accordance with this Article 5.7, that the proposed Majority Ownership Change is non bona fide, the provisions of Article 5.7(f) shall become operative. If the Arbitrator determines that the proposed Majority Ownership Change is bona fide, Maserati shall have five (5) business days from issuance of the Arbitration decision to advise Dealer whether it will nevertheless exercise its Right of First Refusal with respect to the proposed Majority Ownership Change. If the Arbitrator determines that the proposed Majority Ownership Change is non bona fide, Dealer shall pay all fees, costs and expenses in connection with the Arbitration, including reasonable attorneys' fees and costs. If the Arbitrator determines that the proposed Majority Ownership Change is bona fide, Maserati shall pay all fees, costs and expenses in connection with the Arbitration, including reasonable attorneys' fees and costs.

(f) If the proposed Majority Ownership Change is determined by the Arbitrator to be non bona fide, Maserati may nevertheless exercise its Right of First Refusal within ten (10) business days of issuance of the Arbitrator's decision, except that the purchase price for the Offered Interest shall be its Fair Market Value. (In such event, Maserati may elect, but shall not be required to, purchase any of Dealer's real property or leasehold related to the Offered Interest, in which case such real property or leasehold interest shall be considered as part of the Offered Interest.) For purposes of this Article 5.7, "Fair Market Value" means the price at which a willing buyer and a willing seller, in an arms length transaction, would transfer the Offered Interest. If the parties cannot agree on the purchase price within five (5) business days after Maserati exercises its Right of First Refusal in accordance with this Article 5.7(f), then the Fair Market Value shall be determined by a single appraiser (the "Appraiser") jointly selected by Maserati and the Dealer. If the parties cannot agree on the identity of the Appraiser within five (5) business days after the parties determine that they cannot agree on a purchase price,

9

then Maserati and the Dealer shall each select an appraiser who is accredited by the American Society of Appraisers and who is not affiliated with either of the parties, and those two appraisers shall together select the Appraiser. In all cases the Appraiser shall be a senior appraiser accredited by the American Society of Appraisers, and shall not be affiliated with Maserati or the Dealer, and shall have at least 10 years experience in appraising luxury automotive dealerships. The Appraiser shall have the sole responsibility for determining the Fair Market Value of the Offered Interest (with or without any real property or leasehold interest, as Maserati may elect), and in doing so shall consider whatever information he or she deems appropriate, provided that he or she shall follow the applicable standards of the American Society of Appraisers. Dealer shall have sole responsibility for paying the fees and costs of the Appraiser, unless Maserati exercises its Right of First Refusal under Article 5.7(i), in which case Dealer and Maserati shall each pay one-half of the fees and costs of the Appraiser.

(g) Closing of transfer of the Offered Interest shall take place at a time and place mutually agreed upon by Maserati and Dealer, except that such closing shall take place no more than sixty (60) days after the following, as applicable: 1) Maserati's exercise of its Right of First Refusal in accordance with Article 5.7(b); or 2) the parties agreement of the purchase price in accordance with Article 5.7(f); or 3) when the Appraiser provides his or her appraisal report to the parties in accordance with Article 5.7(f). Maserati and Dealer shall each take such actions as may be reasonably requested by the other to consummate the sale of the Offered Interest to Maserati or its assignee within such sixty (60) day period. At closing, the parties shall deliver all documents and conveyancing instruments customarily delivered in an arm's length transaction of similar nature.

(h) If Maserati exercises its Right of First Refusal with respect to a bona fide transaction, Maserati agrees to reimburse Dealer or credit Dealer (against amounts Dealer then owes Maserati in accordance with this Agreement) for the reasonable costs and expenses that Dealer may incur (including liabilities to any bona fide purchaser) as a result of Dealer's inability to complete the sale or transfer of the Offered Interest. These costs may include, but are not limited to, title searches, reasonable attorneys' fees, property inspections and brokers' fees. Dealer shall provide Maserati with all documents substantiating such costs and expenses. In no event shall Maserati's liability to Dealer under this paragraph for reimbursement of said costs or fees exceed Seventy-Five Thousand Dollars ($75,000.00) in the aggregate.

(i) If a proposed bona fide Majority Ownership Change involves a sale or transfer of the Offered Interest to the Dealer Operator, Maserati agrees that if it exercises its Right of First Refusal with respect thereto, the purchase price to be paid by Maserati for the Offered Interest will be the greater of (a) Fair Market Value as defined in Article 5.7(f); and (b) the purchase price agreed to by Dealer (or Dealer's Owners) and Dealer Operator, unless Dealer and Maserati agree in writing to other terms.

(j) If Maserati does not exercise its Right of First Refusal in accordance with this Article 5.7, then Dealer may effect the Majority Ownership Change, but only upon the terms and conditions contained in the proposed Majority Ownership Change delivered to Maserati or on terms more favorable to Dealer (for example, at a higher purchase price), and subject to any conditions required by Maserati in accordance with Article 5.2 in connection with its grant of approval to the proposed Majority Ownership Change granted pursuant to Article 5.2 hereof. Such Majority Ownership Change must close with the proposed purchaser within ninety (90) days after the later to occur of (i) the expiration of the 45-day period referred to subparagraph (b) hereof, (ii) the date Maserati gives notice to Dealer that it does not intend to exercise its Right of First Refusal and approves the proposed Majority Ownership Change in accordance with Article 5.2 hereof; or (iii) the date on which the Arbitrator issues a decision finding that the Majority Ownership Change is bona fide. If the Majority Ownership Change does not close within such ninety (90) day period or if Dealer proposes to close such Majority Ownership Change on terms different than those originally proposed, then such proposed Ownership Transfer shall again be subject to Maserati's Right of First Refusal in accordance with this Section 5.7.

(k) Dealer agrees that, if the Majority Ownership Change involves the sale of all of the equity, or substantially all of the assets of Dealer, all outstanding monetary obligations owed by Dealer to Maserati shall be paid prior to, or at the time of the closing, of the proposed Majority Ownership Change.

FNA0000025

## ARTICLE 6 – GENERAL REQUIREMENTS FOR DEALER'S MASERATI OPERATIONS

6.1 **Conduct of Business.** Dealer, its Owners, Dealer Operator, and management, shall at all times conduct Dealer's business in an ethical, fair and courteous manner and shall avoid any conduct which might be harmful to the reputation and marketing of Maserati Products or the goodwill of Maserati or which is in any way inconsistent with the public interest.

6.2 **Business Hours.** Dealer shall keep its Dealership Facilities open for business during, and for not less than, the customary business days and hours of the trade in Dealer's community.

6.3 **Compliance with Laws.** Dealer will, at all times, maintain current and valid all licenses required of Dealer for operation of Dealer or occupancy of the Dealership Facilities and will adhere to all laws, rules, regulations and codes relating to the conduct of its business which are applicable to Dealer. In addition, Dealer will comply with all applicable provisions of the National Traffic and Motor Vehicle Safety Act of 1966, the Federal Clean Air Act, the Magnuson-Moss Warranty Act and any applicable state repair/replace legislation, all as amended, including regulations issued hereafter, together with any other federal, state and local vehicle emission, safety and warranty legislation. Dealer agrees to disclose information with respect to the foregoing in a manner and in such form as Maserati may, from time to time, reasonably request.

6.4 **Modification of Maserati Products.** Dealer shall not modify a Maserati Product in any manner which (i) causes, or may cause, such Product to fail to comply with any motor vehicle safety standard; (ii) creates, or may create, a risk to motor vehicle safety or which causes any such product not to comply with any other federal, state, provincial or local law or regulation; or (iii) voids or may void any warranties applicable to such Product.

6.5 **Compliance with Maserati's Recommendations.** Dealer shall comply with all reasonable directives and recommendations of Maserati in the marketing and sale of Maserati Vehicles, the sale of Genuine Maserati Parts and the performance of customer services, including warranty servicing of Maserati Vehicles.

6.6 **Performance Agreement.** In the event Maserati in the exercise of its reasonable business judgment determines that Dealer should construct, renovate and/or relocate its Dealer Facilities, make changes in its management and/or personnel, improve sale or service performance, increase customer satisfaction, increase capital investment or otherwise modify its Maserati Operation, an agreement specifying such modifications shall be memorialized in a Performance Agreement. Any change in Dealer's Dealership Facilities shall be made at Dealer's sole cost and expense and shall be made in accordance with plans produced by Dealer and expressly approved by Maserati in writing. In negotiating a Performance Agreement, the parties will give due consideration to the economic consequences of the Performance Agreement on Dealer, it being understood, however, that the short-term costs of complying with the Performance Agreement must be weighed against, and be viewed in light of, its long-term benefits. Any Performance Agreement entered into by Dealer and Maserati shall be an exhibit to these Standard Provisions and shall, subject to applicable state or provincial laws, govern the relationship between the parties as if set forth herein in full.

6.7 **Review of Customer Satisfaction Data.** Dealer commits to review with care all customer satisfaction data provided by Maserati to Dealer and to take such steps as are reasonably necessary and appropriate to correct any deficiencies in its sales, service or parts operations or customer services revealed by such data, it being understood that such data are used by Maserati to determine compliance with Articles 7 and 8 hereof.

6.8 **Maintenance of Accounting Systems; Sales Information.**

   (a) Dealer agrees to purchase and use Maserati-approved data processing and computer systems to maintain its accounting records, parts inventory and similar records on a current basis.

   (b) Dealer agrees to maintain complete and accurate records relating to all sales of Maserati Products and all customer services provided to Maserati customers as well as complete and accurate files regarding any and all actual and prospective Maserati customers. Dealer further agrees to supply copies of such records to Maserati upon request.

FNA0000026

6.9 <u>Access to Dealer's Premises and Records.</u>

    (a) Until termination of the Agreement and thereafter until consummation of all the transactions referred to in Article 17.1 hereof, Maserati, through its designated employees and other designees, shall have the right, at all reasonable times during regular business hours and on reasonable notice, to inspect the Dealership Facilities, to oversee Dealer's Maserati Operations, to review Dealer's records, and to observe the nature and quality of Dealer's customer services, and Dealer shall cooperate fully and take all action necessary to facilitate such inspections, reviews, oversight and observations.

    (b) Maserati shall have the right, at all reasonable times during regular business hours and on reasonable notice, to electronic access to all records relating to Dealer's Maserati Operations, including (i) accounting information, (ii) inventory and sales of Maserati Products, (iii) customer service provided to Maserati customers, (iv) prospective Maserati customers, and (v) financial and operational data.

6.10 <u>Insurance.</u> Dealer shall maintain comprehensive and excess liability insurance policies in an amount sufficient to meet all reasonably anticipated contingencies, including legal judgments entered against Dealer. In no event shall the aggregate value of the policies be less than Three Million ($3,000,000.00) Dollars. The policies must be issued by an insurance company with a Best's insurance rating of "B+" or better. Copies of said policies will be supplied by Dealer to Maserati upon Maserati's request.

## ARTICLE 7 – SALE AND PROMOTION OF MASERATI PRODUCTS

7.1 <u>Maserati Customer Events.</u> Dealer will actively promote the sale of Maserati Products through systematic contacts with existing and potential owners of Maserati Vehicles and through such other reasonable means as Maserati may from time to time recommend. Dealer expressly agrees to sponsor and/or participate in Maserati Customer Events on a regular basis as part of its continuing obligations under this Agreement.

7.2 <u>Sales Performance.</u> Within the limitations, if any, resulting from the quantity of Maserati Vehicles made available to Dealer by Maserati, Dealer shall use best efforts to achieve the best sales performance in its RMA for Maserati Products, used Maserati vehicles and Maserati services. Sales performance objectives will be established by Maserati from time to time, after consultation with Dealer. Evaluation reports will be furnished to and discussed with Dealer so that Dealer may take prompt action as necessary to achieve satisfactory sales performance results in accordance with such performance objectives.

7.3 <u>Deposits and Trade-Ins.</u> Dealer shall hold any payments or goods received from customers, whether in money or in kind, which are to be applied towards the subsequent purchase of a new or used Maserati Vehicle (the "Deposit"), in such a manner as Maserati may from time to time establish. Dealer shall notify Maserati, by such means and at such intervals as shall be designated by Maserati from time to time, concerning Dealer's receipt of Deposits. If a trade-in is applied toward the purchase of a new or used Maserati Vehicle from Dealer, Dealer shall either promptly pay off any loan encumbering the vehicle traded in or enter into a written consignment agreement with the customer at the time of delivery of the trade-in. Failure to comply with Maserati's instructions regarding a Deposit, to apply or reimburse funds, as required, to notify Maserati of receipt of a Deposit or pay off a loan, shall constitute a material breach of Dealer's obligations hereunder.

7.4 <u>Dealer's Market.</u> Dealer acknowledges and agrees that Maserati has appointed Dealer as an authorized Dealer in Maserati Products at the Dealership Facilities for the primary purpose of selling and servicing Maserati Products in Dealer's RMA. Dealer specifically acknowledges and agrees that Maserati may, from time to time, in the exercise of its reasonable judgment, modify the definition of Dealer's RMA. Nothing in this Agreement grants to Dealer an exclusive sales or service area and the definition of a RMA shall not in any way restrict Maserati's right to relocate or appoint additional retail representation within such RMA, subject to Maserati's obligations under Paragraph B of the Dealer Agreement. For purposes of any statute which restricts such right of relocation or appointment, the Dealer's RMA shall in no event be deemed to comprise an area larger than the maximum radius mileage or area expressly defined by such statute, without reference to this Agreement or any other definition of Dealer's RMA used by Maserati.

12

7.5 **Notification to Maserati of Difficulty to Repair.** Because certain customer complaints concerning Maserati Vehicles may have legal significance for, or impose liability upon, Dealer and/or Maserati under various "Repair or Replace" or other consumer protection laws and regulations, Dealer agrees to provide Maserati with prompt notice of all such complaints. Dealer agrees to take other steps as Maserati may reasonably require, including, without limitation, providing notice to Maserati when a vehicle is brought into Dealer which may become subject to such law or regulation prior to a presumption of liability arising under such law or regulation from the inability to repair or correct a nonconformity or condition of a Maserati Vehicle. Dealer hereby agrees to do nothing to affect adversely Maserati's rights under such laws and regulations, and recognizes that failure to comply with this provision may result in a chargeback from Maserati for monies expended in remedying such complaints which in the reasonable opinion of Maserati were caused wholly or predominantly by Dealer.

7.6 **Dealer's Purchase of Maserati Products.** Maserati may, in its discretion, but only by supplementary or separate agreement, authorize Dealer to purchase for resale Maserati products other than Maserati Vehicles and Genuine Maserati Parts.

7.7 **Marketing and Sale of Non-Automotive Maserati Products.** Notwithstanding any of the provisions contained herein to the contrary, Maserati retains the exclusive right, in its sole discretion, to enter into any marketing and sale arrangements for non-automotive Maserati products, which arrangements may preclude any or all Maserati dealers from marketing and/or selling such products.

7.8 **Waiting Lists.** Because the supply of Maserati Vehicles may, at times, not be adequate to meet customer demand, Dealer agrees to maintain a list of customers that express a desire to be placed on a waiting list for a Maserati Vehicle (the "Waiting List"), in such a manner as Maserati may from time to time establish. Subject to applicable state or provincial privacy laws, if any, Dealer shall provide Maserati, by such means and at such intervals as shall be reasonably designated by Maserati from time to time, with a copy of Dealer's Waiting List. Maserati agrees that the Waiting List shall be treated in a confidential manner, and not shared with any other Maserati Dealer, and shall be used primarily for Maserati to establish and maintain contact with these customers so as to maintain and encourage their interest in Maserati Vehicles. Notwithstanding the foregoing provisions of this Article 7.8, if Dealer, in the reasonable exercise of its business judgment, believes that compliance with this paragraph may subject Dealer to liability under state or provincial law, Dealer and Maserati shall use their best efforts to agree upon an alternative manner of Dealer compliance so that Dealer's compliance with such provisions will not subject Dealer to such liability.

## ARTICLE 8 – CUSTOMER SERVICE

8.1 **Importance of Service Department.** Maserati and Dealer understand and agree that their mutual success depends upon their ability to provide exceptional levels of customer satisfaction with Maserati Products and the authorized dealers who represent them. Maserati commits to use reasonable commercial efforts to assist Dealer in achieving this objective and Dealer commits to provide the highest level of expert customer service at reasonable prices to all owners of Maserati Vehicles, regardless of whether or not they have purchased such vehicles from Dealer. Dealer shall not engage in any service practice with respect to any Maserati Product if the nature or quality of such service has been reasonably objected to by Maserati.

8.2 **Body Repair Services.** Dealer agrees to provide body repair services for Maserati Vehicles. Dealer may provide these services either through its own body shop or by arrangement with an auto body repair shop owned by a third party and acceptable to and approved by Maserati.

8.3 **Management and Training of Service Department.** Dealer expressly agrees that the operation of a fully-equipped, well-managed Service Department, staffed with courteous, experienced, personnel fully trained in the servicing and repair of Maserati Products, and able to provide exceptional levels of customer satisfaction is essential to the fulfillment of Dealer's obligations under this agreement.

13

8.4 **Service Department Facilities.** Dealer's Service Department must comply in all respects with the requirements of Maserati's Facilities/Personnel Guide and Corporate Identification Program, including but not limited to the requirements relating to the size, layout and decor of the facilities. Dealer also agrees that the entire Service Department will be maintained in a clean, well-organized and attractive condition.

8.5 **Tools Used by Service Department.** Dealer will purchase and maintain in good working order (i) such special Maserati tools and shop equipment as Maserati shall from time to time specify and (ii) such general tools and shop equipment as are necessary and appropriate for the servicing and repair of Maserati Products.

8.6 **Pre-Delivery Inspection and Servicing.** Dealer recognizes and accepts its obligation to use its best efforts to effectively service and condition each new Maserati Vehicle before delivery in accordance with any pre-delivery inspection, service and conditioning schedules or notifications furnished from time to time by Maserati to Dealer.

8.7 **Evaluation of Dealer's Service Department.** Dealer's performance of its service responsibilities will be evaluated by Maserati from time to time. Results of any customer service satisfaction surveys and service evaluation reports will be furnished to and discussed with Dealer so that Dealer may take prompt action to achieve and maintain satisfactory performance in all aspects of Dealer's service operations.

8.8 **Performance of Warranty Service.** Dealer shall perform all warranty obligations of Maserati in accordance with the terms and conditions of the warranties issued by Maserati from time to time. Dealer will provide prompt, courteous and expert warranty service and repair of all Maserati Products covered by Maserati's warranties, regardless of whether such Maserati Products have been sold by Dealer. In doing so, Dealer shall comply with all local, state, provincial and federal laws and regulations respecting such warranties and shall be solely responsible for the quality of the warranty service it performs.

8.9 **Warranty Procedures.**

(a) Maserati shall establish policies and from time to time procedures for the processing, payment or other disposition of warranty claims and for the return and disposition of Genuine Maserati Parts claimed to be non-conforming. Strict adherence to the procedures (including but not limited to any pre-approval procedures) established for performing warranty repairs and processing warranty claims is necessary in order for Maserati to process such claims fairly and expeditiously. Maserati will be under no obligation whatsoever with respect to warranty claims not submitted on a timely basis and strictly in accordance with such procedures. Dealer will be promptly compensated for warranty work (labor, parts and sublet) actually performed, for which Dealer submits full, complete and accurate warranty claims, and for which Dealer has appropriate supporting documentation, in accordance with Maserati's warranty policies and procedures.

(b) Dealer is not authorized to assume or incur any other or additional warranty obligations or liabilities on behalf of either Maserati S.p.A. or Maserati. Any such other or additional obligations assumed or incurred by Dealer shall be solely the responsibility of Dealer, including the disclosure of the identity of the supplier or warrantor, the existence of a warranty, and the specific terms and conditions of such warranty to the consumer. Dealer shall not, by act or omission, expand, modify, limit, nullify or interfere with Maserati's warranty obligations.

8.10 **Records of Warranty Claims.** Dealer shall prepare and maintain such records as Maserati may reasonably require to support the warranty claims submitted by Dealer to Maserati. Dealer understands and agrees that Maserati will from time to time perform audits of such warranty records and supporting documentation and Dealer agrees to comply with any recommendations made to it to improve its procedures and/or recordkeeping as a result of such audits. Dealer also understands that Maserati shall, at its option, and in addition to any other remedies it may have, chargeback any credits previously posted to Dealer's account for any incomplete, inaccurate, false or fraudulent warranty claims or for any warranty claims for which Dealer lacks appropriate supporting documentation or which do not otherwise comply with Maserati's warranty policies and procedures.

14

FNA0000029

## ARTICLE 9 – PURCHASE AND INVENTORY OF GENUINE MASERATI PARTS

9.1 Inventory of Genuine Maserati Parts.

    (a) Dealer shall acquire and at all times maintain a sufficient inventory of Genuine Maserati Parts to (i) meet all of its current and anticipated warranty and service obligations on a prompt and regular basis, (ii) meet or exceed any reasonable stocking requirements established from time to time by Maserati and (iii) develop and maintain a wholesale parts business. Dealer expressly understands and agrees that failure to maintain a reasonable, adequate and representative stock of Genuine Maserati Parts is a material breach of its obligations under this Agreement.

    (b) The Dealer shall maintain, in electronic format, a complete and accurate inventory of all Genuine Maserati Parts, and shall maintain such inventory in a manner which is consistent with recommendations made by Maserati.

9.2 Condition of Parts Department. Dealer will maintain its entire Parts Department in a clean, well-organized and attractive condition.

9.3 Price of Genuine Maserati Parts. Maserati shall sell Genuine Maserati Parts to Dealer at such prices and upon such terms and conditions as may be established by Maserati from time to time. Such terms may provide for open account, limited open account, C.O.D. or cash as Maserati may consider appropriate. If Maserati delivers Genuine Maserati Parts on a C.O.D. basis, collection charges, if any, are to be paid by Dealer. Dealer is responsible for any and all applicable sales, excise, use and other taxes, governmental or municipal charges imposed or levied or based upon the sale of Genuine Maserati Parts by Maserati to Dealer or by Dealer to the customer. In the event of any increase in the price established by Maserati for Genuine Maserati Parts, Dealer will have the right to cancel all orders for Genuine Maserati Parts affected by the increase which are pending and unfilled at the time Dealer obtains notice of the increase, provided that Maserati is notified in writing of such cancellation within ten (10) days from the time Dealer obtains such notice.

9.4 Incomplete Delivery. All claims for incomplete delivery of Genuine Maserati Parts must be made by Dealer in writing within five (5) business days of Dealer's receipt of shipment.

9.5 Return of Non-Conforming Genuine Maserati Parts.

    (a) Dealer may, after receipt of written authorization from Maserati, return new, undamaged, non-conforming Genuine Maserati Parts in their original packaging to Maserati for credit, together with the original invoice indicating Dealer's purchase price of such Genuine Maserati Parts. Such Genuine Maserati Parts shall be shipped, shipping charges prepaid, to the destination specified by Maserati. Dealer will be reimbursed for shipping charges prepaid by it on authorized returns of non-conforming Genuine Maserati Parts based on the lowest applicable rate of transportation by common carrier.

    (b) Dealer may return, after receipt of written authorization from Maserati, new, undamaged, Genuine Maserati Parts in their original packaging shipped to Dealer due to Maserati's shipping error. Such Genuine Maserati Parts shall be shipped, shipping charges prepaid, to the destination specified by Maserati and Dealer shall be credited for such prepaid shipping charges based on the lowest applicable rate of transportation by common carrier. Dealer will also be credited for the invoiced prices of the returned Genuine Maserati Parts.

9.6 Return of Specially Ordered Maserati Products. Dealer will not be entitled to return (1) any materials which have been acquired or specially fabricated by Maserati upon Dealer's order, or (2) unlisted Genuine Maserati Parts or assemblies or any cut or fabricated upholstery or trim items.

9.7 Delivery of Genuine Maserati Parts. Delivery of Genuine Maserati Parts ordered by Dealer shall be made by overnight delivery, common carrier or other similar modes of transportation. If freight charges are to be paid by Maserati, the means of transportation will be selected by Maserati in its sole discretion.

9.8 Dealer's Account with Maserati. Subject to the foregoing, Maserati will maintain an open account for Dealer in accordance with such terms and conditions as Maserati may from time to time establish. Maserati will credit such account with certain amounts due and owing to Dealer from Maserati, including but not limited to amounts due for warranty claims submitted by Dealer to, and approved by, Maserati.

FNA0000030

Provided that Dealer's account with Maserati remains current, Maserati will debit such account for certain purchases made by Dealer from Maserati, including but not limited to the total cost of all parts ordered and filled by Maserati for Dealer to the extent shipped on open account. Maserati will issue a statement as of the end of each month summarizing the activity in Dealer's account for that month and indicating whether Dealer's account is in a debit or credit position as of the last day of such month. Dealer will be obligated to pay to Maserati within fifteen (15) days of the date of such statement the total amount of any debit balance, without deduction or setoff of any kind. Dealer's failure to pay such amounts as required shall constitute a material breach hereunder. Maserati, in turn, agrees to pay to the Dealer by the fifteenth (15th) day of each month any credit balance existing in the Dealer's account as of the last day of the preceding month, provided that Maserati has not concluded that the Dealer's financial condition is such that payment of such monies will jeopardize Maserati's ability to collect any bona fide debt owed by the Dealer to Maserati.

9.9 Representations as to Genuineness of Parts Used and Sold by Dealer. Dealer shall not represent as new, Genuine Maserati Parts or as parts approved or authorized by Maserati or Maserati S.p.A., any parts which are not in fact new, Genuine Maserati Parts or parts expressly approved or authorized by Maserati S.p.A. or Maserati. Dealer shall not sell, offer for sale or install non-approved parts or accessories if the nature or quality thereof has been reasonably objected to by Maserati. Dealer will not install on any Maserati Vehicle any non-approved parts or accessories which (a) may affect the owner's rights under any warranty applicable to the vehicle; (b) may create any unreasonable risk to motor vehicle safety or environmental compliance; or (c) are necessary to the proper mechanical operation of such Maserati Vehicle. If Dealer sells parts which are not new, Genuine Maserati Parts or parts approved by Maserati S.p.A. or Maserati, Dealer shall disclose in writing to the customer such fact and that such parts are not warranted by Maserati.

## ARTICLE 10 – CAPITAL AND OPERATING STANDARDS, FINANCIAL STATEMENTS AND REPORTS

10.1 Capital and Operating Standards. Dealer recognizes that in order to conduct its business in a commercially viable manner and to fulfill its obligations under this Agreement, Dealer must at all times comply with the reasonable Capital and Operating Standards established from time to time by Maserati. If Maserati in the exercise of its reasonable business judgment determines at any time that Dealer is not complying with the Capital and Operating Standards, or reasonably anticipates such noncompliance, Dealer will take whatever steps are necessary to meet such Capital and Operating Standards within a reasonable time after notification by Maserati to Dealer of any such deficiency or anticipated deficiency. Dealer agrees, upon request, to provide Maserati with electronic access to all information and data necessary to determine Dealer's compliance with said Capital and Operating Standards.

10.2 Reports of Dealer's Sales and Inventory; Departmental Profitability. Dealer shall furnish to Maserati, at such intervals as Maserati may specify, complete and accurate reports of Dealer's sales and stocks of Maserati Vehicles, of used Maserati vehicles and other used automobiles, order portfolio, Genuine Maserati Parts, and Maserati services. Such reports required hereunder shall be submitted in electronic form or in such other form as Maserati may from time to time require. Dealer shall also furnish from time to time to Maserati such other reports and financial statements as Maserati may reasonably require, in order to analyze Dealer's operating performance and financial condition on a current and ongoing basis, including, but not limited to, reports regarding business management ratios, which ratios must comply with minimum standards set forth by Maserati from time to time, and Maserati shall have electronic access to all information and data necessary to calculate such ratios.

10.3 Maintenance of Books of Account. Dealer shall keep accurate and current books of account in accordance with an accounting system approved by Maserati.

10.4 Monthly Financial Statements. Dealer shall furnish to Maserati, on or before the fifteenth (15th) day of each calendar month, in electronic form or on such forms as Maserati may require, a financial statement completely and accurately reflecting the results of Dealer's Maserati Operations for the preceding month and year-to-date.

16

10.5 <u>Yearly Financial Statements.</u>  Maserati also reserves the right, upon prior written notice, to require Dealer to provide within three months after the close of Dealer's fiscal or calendar year, a financial and operating statement for such year for Dealer and/or Dealer's other consolidated corporate operations which may affect the Maserati dealership, which statements shall, at Maserati's option, be audited or reviewed and compiled, subject to appropriate and acceptable representations made to Maserati by Dealer's owners and managers as to their accuracy and completeness. Upon review of such statements, Maserati may reasonably require Dealer to invest additional capital or obtain other financial guarantees to ensure the continued economic viability of the dealership operations.

10.6 <u>Confidentiality of Dealer Data.</u>  Maserati will not furnish to any third party (other than affiliates of Maserati, including but not limited to Maserati S.p.A. and any financial services affiliate) any data, including but not limited to financial statements, submitted to it by Dealer unless authorized to do so by Dealer, or required to do so by law. Maserati reserves the right, however, to use data supplied by Dealer to compile composite reports either for its own use or for distribution to its authorized dealers or third-parties.

10.7 <u>Access to Dealer's Premises and Auditing of Records.</u>  Dealer agrees that Maserati may from time to time arrange at its own expense to audit or otherwise review Dealer's records. Until termination of this Agreement and thereafter until consummation of all the transactions referred to in Article 17.1 hereof, Maserati, through its designated employees and other designees, shall also have the right, at all reasonable times during regular business hours and on reasonable notice, to inspect Dealer's books and records and all Maserati Products on hand at the Dealership Facilities and Dealer shall cooperate fully and take all reasonable actions necessary to facilitate such inspection.

## ARTICLE 11 – TRADEMARKS

11.1 <u>Use of Maserati Trademarks by Dealer.</u>  Dealer agrees that it will use the Maserati Trademarks only in connection with the promotion and sale of Maserati Products and customer service for Maserati Products and only in such manner, at such location, to such extent, for such purposes and meeting such standards as Maserati may specify from time to time. Any such use shall be non-exclusive. Dealer agrees to cooperate with Maserati in facilitating Maserati's monitoring of Dealer's compliance with Maserati's standards relating to use of the Maserati Trademarks and to permit reasonable inspection of Dealer's Operations in connection with same.

11.2 <u>Exclusive Ownership of Maserati Trademarks.</u>  Dealer shall not use, for any purpose or in any manner, any word, coined word, symbol, or abbreviation which is similar to, or may be confused with, or contains a significant part or element of any Maserati Trademark or which otherwise violates Maserati's Corporate Identification Program. Dealer shall not use as part of its corporate or trade name the word "Maserati" unless expressly authorized to do so by Maserati in writing. Dealer is expressly authorized to use the designation "Authorized Maserati Dealer," "Genuine Maserati Parts" and "Authorized Maserati Service" in connection with its Maserati Operations. No Maserati Trademark may be used except in the color, size, form and style as uniformly approved by Maserati in the Corporate Identification Program or otherwise. Dealer shall not remove or alter any Maserati Trademark affixed to any Maserati Product by Maserati or a third-party authorized by Maserati to do so, or one of its corporate affiliates. Dealer shall not use, display, advertise or sell any product which incorporates or utilizes a Maserati Trademark unless such product is manufactured or licensed by Maserati or one of its corporate affiliates. Dealer shall not file, register, or record with any federal, state, provincial, local government, or agency thereof any name, design or form which may be confused with a Maserati Trademark. Dealer acknowledges the exclusive ownership by Maserati S.p.A. or Maserati of, and the validity of, the Maserati Trademarks and all registrations thereof, and shall not contest such exclusive ownership of, or the validity of, the Maserati Trademarks and all registrations thereof. Dealer agrees to take such steps as Maserati may reasonably request to protect the Maserati Trademarks and properly designate Maserati S.p.A. and/or Maserati as the legal owner(s) thereof. The parties agree to cooperate with each other and with Maserati S.p.A. in preventing any acts of trademark infringement or unfair competition with respect to any Maserati Trademark, but Maserati S.p.A. and Maserati shall have sole control over and discretion with respect to commencement of any actions and legal proceedings to enjoin infringement of and unfair competition with respect to any Maserati Trademark.

17

FNA0000032

11.3 <u>Use of Maserati Trademarks by Dealer Upon Termination of Dealer Agreement.</u>  Dealer shall discontinue the use of any Maserati Trademark upon the termination of this Agreement. In the event Dealer fails to comply with the terms of this Article, Maserati shall serve Dealer with written notice of such failure and demand that Dealer immediately cease and desist from the use of said trademarks. Dealer agrees that the Maserati Trademarks possess a special, unique and extraordinary character which makes difficult the assessment of the monetary damage which would be sustained by Maserati in the event of any unauthorized use. Dealer specifically recognizes that irreparable injury would be caused by unauthorized use. Maserati reserves all rights to seek preliminary and permanent injunctive relief to prevent such unauthorized use. Such remedies shall not be exclusive of other legal or equitable remedies otherwise available to Maserati.

11.4 <u>Use of Trademarks in Connection With Used Automobiles.</u>  Dealer shall not use, in connection with the sale of used Maserati automobiles, any Maserati Trademark unless Dealer shall have complied fully with all directives and recommendations of Maserati relating to standards, practices, and facilities for used Maserati automobile sales under such trademarks or trade names, including but not limited to any guidelines promulgated in connection with the Corporate Identification Program.

## ARTICLE 12 – ADVERTISING AND MERCHANDISING

12.1 <u>Contents of Advertising.</u>  Both Maserati and Dealer recognize the need to maintain uniformly high standards in the advertising and merchandising of Maserati Products. Dealer commits to conduct all of its advertising and merchandising efforts in a truthful and ethical manner and consistent with the reputation and image of Maserati Products. Failure to do so shall constitute a material breach of this Agreement. Dealer shall forthwith discontinue any advertising and cease to use or sell any promotional materials or accessories to which Maserati objects. Maserati specifically reserves the right to require Dealer to cease any advertising inconsistent with this provision including the right to prohibit Dealer from using Maserati Trademarks in advertising.

12.2 <u>Participation in Advertising Programs.</u>  Dealer agrees to participate in any cooperative advertising program and, where applicable, in any local market advertising program, which are funded jointly by Maserati and its authorized dealers and operated by Maserati. Failure by the Dealer to participate in such programs, when a majority of other authorized dealers or in Dealer's metropolitan area are participating, as the case may be, is inconsistent with Dealer's obligations under this Agreement and shall be considered a material breach hereof.

12.3 <u>Sales Aids.</u>  Maserati will offer to Dealer, on the same terms and conditions as other authorized dealers, such sales aids as brochures, posters, promotional kits and similar advertising materials as Maserati may from time to time prepare and disseminate. Dealer will acquire and make available to its customers and potential customers such sales aids as are reasonably necessary for the operation of its dealership.

## ARTICLE 13 – INDEMNIFICATIONS

13.1 <u>Indemnification by Maserati.</u>

(a) Maserati shall indemnify and hold Dealer harmless from loss, damages and expense, including reasonable attorneys' fees, resulting from or arising out of lawsuits filed or other claims or actions asserted against Dealer:

(i) which seek damages for bodily injury or property damage (other than claims of breach of warranty or violations of the Magnuson-Moss Act, state repair/replace statutes or similar federal, state, provincial or local laws) caused by an alleged non-conformity in the design or the manufacture of a Maserati Vehicle, not reasonably susceptible of discovery by Dealer in either its pre-delivery inspection and preparation of the Maserati Vehicle or subsequent servicing, and

(ii) which do not plead claims against Dealer for negligence in the preparation, servicing, or repair of a Maserati Product.

18

(b) If any lawsuit pleads claims against Dealer for acts of negligence in the preparation, servicing or repair of a Maserati Product, Maserati shall nevertheless defend and indemnify Dealer, if Maserati, acting in good faith, makes a determination that the allegations of dealer negligence are without merit or are not a genuine issue in the lawsuit. Such initial determination shall, however, be subject to review and reconsideration by Maserati during the course of the lawsuit. If Maserati at any time determines in good faith that the allegations of Dealer negligence do raise a genuine issue in the lawsuit, Maserati will so advise Dealer, shall tender to Dealer the defense of the lawsuit from that time forward, and shall have no further obligation to defend or indemnify Dealer under this provision, provided however, that if it is determined that the allegations of Dealer negligence are without merit or are not a genuine issue of fact in the lawsuit or claim, Maserati shall reimburse Dealer all amounts for which Dealer would have been entitled to defense or indemnity under this Article 13, had Maserati not tendered the defense of the lawsuit or claim to Dealer.

(c) Maserati is specifically authorized by Dealer to settle or to continue to defend any lawsuit or claim brought against Dealer that Maserati has an obligation to indemnify Dealer under Article 13.1(a) or (b) hereof, provided that Maserati shall be solely liable for the payment of the amount of any settlement which it effects or judgment that is rendered.

13.2   Indemnification by Dealer.

(a) Dealer shall indemnify and hold Maserati harmless from loss, damage and expense, including reasonable attorneys' fees, resulting from or arising out of lawsuits filed or other actions or claims asserted against Maserati arising out of:

(i) Dealer's alleged failure to perform, or negligent performance of, any obligations under this Agreement, or any maintenance, repair service or alteration performed on any Maserati Vehicle or other motor vehicle sold or serviced by Dealer;

(ii) Dealer's alleged breach of any contract between Dealer and Dealer's customer, provided, however, that the breach was not caused by any act or omission on the part of Maserati;

(iii) Dealer's alleged misleading statements, misrepresentations or unfair or deceptive acts or practices, whether through advertisement or otherwise, affecting any customer of Dealer, provided, however, that the statements, representations or advertisements are not based solely on information or material produced or supplied to Dealer by Maserati.

(b) In the event that any action based upon or relating to allegations set forth in subparagraphs 13.2(a)(i) through (iii) above is filed naming Maserati as a defendant, Dealer will, following receipt of notice from Maserati, undertake the defense of the action on behalf of Maserati at Dealer's sole expense, but only to the extent that such defense is required under Article 13.2(a). Dealer is specifically authorized by Maserati to settle or defend any such action on behalf of Maserati provided that the cost of said defense and/or settlement and any judgment are borne exclusively by Dealer. Dealer agrees to maintain liability insurance in amounts sufficient to meet its obligations pursuant to this Article.

(c) If Dealer refuses for any reason to undertake Maserati's defense, or fails to undertake such defense on terms reasonably satisfactory to Maserati, when obligated to do so under this Article, Maserati may conduct its own defense and Dealer shall be liable for any judgments, costs and reasonable attorneys' fees paid or incurred by Maserati with respect thereto.

(d) If Dealer at any time determines in good faith that the allegations of Maserati negligence do raise a genuine issue in the lawsuit, Dealer will so advise Maserati, shall tender to Maserati the defense of the lawsuit from that time forward, and shall have no further obligation to defend or indemnify Maserati under this provision, provided however, that if it is determined that the allegations of Maserati negligence are without merit or are not a genuine issue of fact in the lawsuit or claim, Dealer shall reimburse Maserati all amounts for which Maserati would have been entitled to defense or indemnity under this Article 13, had Dealer not tendered the defense of the lawsuit or claim to Maserati.

13.3   Notification of Indemnification.

(a) If Dealer or Maserati intends to request of the other indemnification or defense with respect to any

19

lawsuit, each shall, no later than ten (10) days after service of a complaint, notify the other in writing of such request and shall supply to the other copies of any pleadings served to date and any information then reasonably available concerning the circumstances allegedly giving rise to such complaint.

(b) Any request for defense and indemnification shall be accepted or rejected by the party to whom the request is made within ten (10) days following receipt of such request. Prior to receipt of a response to its request, each party agrees to take all reasonable steps to ensure that defense of the complaint is in no way prejudiced. If the request is accepted, the party making the request shall cooperate fully in the defense of the complaint in such manner and to such extent as the party assuming the defense may reasonably require. Any expenses incurred by either party prior to acceptance of any request for defense and indemnification shall be borne solely by the party making such request.

13.4 <u>Attorneys' Fees.</u>  Except as otherwise provided for in this Article 13, whenever a complaint alleges liability on the part of both Maserati and Dealer on the bases set forth in 13.1 and 13.2 respectively, each party shall be responsible for its own defense, including costs and attorneys' fees, unless one party offers to undertake the total defense and the other party agrees thereto in writing. Maserati's or Dealer's responsibility for its own defense pursuant to this Article, or pursuant to any other circumstances not within the scope of these indemnification provisions, shall in no way affect whatever legal rights either may have, including rights to indemnification or contribution from the other.


## ARTICLE 14 – TERMINATION

14.1 <u>Termination by Mutual Agreement.</u>  Subject to the terms and conditions of Article 17.5 hereof, Maserati and Dealer may at any time agree to terminate this Agreement on such terms and subject to such conditions as the parties hereto may consider mutually satisfactory.

14.2 <u>Termination by Dealer.</u>  Subject to the terms and conditions of Article 17.5 hereof, Dealer may terminate this Agreement by sending written notice of such termination to Maserati not less than sixty (60) days prior to the effective date of such termination.

14.3 <u>Termination Due to Expiration of Maserati's Status as Distributor of Maserati Products.</u>  Maserati may terminate this Agreement upon sixty (60) days prior written notice to Dealer, or on such other notice as may be provided for under applicable law, in the event that Maserati Vehicles are withdrawn or suspended from importation and sale in the United States or Canada, as applicable.

14.4 <u>Termination Due to Offer of New or Modified Dealer Agreement.</u>  Subject to state or provincial laws and except to the extent a greater notice period is required by any applicable law, in which case the minimum notice period shall be deemed to be the minimum period required by such law, Maserati may terminate this Agreement upon thirty (30) days prior written notice to Dealer, in the event that Maserati terminates all outstanding dealer agreements with its authorized Dealers in connection with Maserati's simultaneous offer to all dealers then in good standing of a new or modified form of this Agreement

14.5 <u>Termination for Cause.</u>  Subject to state or provincial laws and except to the extent a greater notice and/or cure period is required by any applicable law, in which case the minimum notice period shall be deemed to be the minimum period required by such law, Maserati shall have the right to terminate the Agreement for cause, with immediate effect, by sending notice of such termination to Dealer by hand delivery, recognized overnight mail service, or certified or registered mail, return receipt requested, if any of the following events should occur:

(a) Any material misrepresentation by Dealer's owners, officers or Dealer Operator as to any fact relied upon by Maserati in entering into or continuing this Agreement or relied upon by any affiliate of Maserati in entering into or continuing any agreement to which Dealer and any such affiliate are parties;

(b) Any attempted or actual sale, transfer or assignment by Dealer of this Agreement, or any of the rights granted to it under this Agreement, or any attempted or actual transfer, assignment or delegation by Dealer of any of the responsibilities assigned to Dealer under this Agreement without Maserati's express prior written approval in the manner set forth in this Agreement;

20

(c) Any attempted or actual Ownership or Dealer Operator Change for any reason, without the prior written approval of Maserati, which approval shall not be unreasonably withheld, provided that Dealer has fulfilled the terms and conditions of this Agreement;

(d) Subject to provisions contained herein with regard to any Ownership or Dealer Operator Change occurring by reason of death or permanent disability of Dealer's Owners, or any change, whether voluntary or by operation of law, in the appointment of a Dealer Operator, without prior consultation with and the prior written approval of Maserati, which approval shall not be unreasonably withheld, provided Dealer has fulfilled the terms and conditions of this Agreement;

(e) Any change in the location of any of the Dealership Facilities, the establishment of additional facilities, or the conduct of any dealership operations other than at the location specifically approved herein, without prior consultation with and the prior written approval of Maserati, which approval shall not be unreasonably withheld, provided Dealer has fulfilled the terms and conditions of Article 4 hereof;

(f) Dissolution, liquidation, or insolvency of Dealer or the voluntary filing by Dealer of a petition in bankruptcy, or filing of a petition to have Dealer declared bankrupt; or the appointment of a receiver or trustee for Dealer or Dealer's business; or any levy under attachment not vacated within sixty (60) days, execution or similar process or the execution of an assignment for the benefit of creditors, or any process of law by which a third party acquires rights in or to the ownership, operations or facilities of Dealer;

(g) Conviction or plea of guilty or nolo contendere in any court of competent jurisdiction of Dealer, or of any of the persons named in Article D of the Dealer Agreement, of any crime relating to Dealer's Maserati Operations or of any felony or other crime unrelated to such operations which implicates the honesty, integrity or moral character of such persons; or the finding by any government agency or court that Dealer or any other person specified in Article D of the Dealer Agreement has committed any unfair business practice, or, having been charged with any such unfair business practice, the operative provisions of a resolution of such charge permits the inference that all or some of the acts charged actually occurred;

(h) Submission by Dealer of any false or fraudulent report, statement or claim;

(i) Failure by Dealer to conduct its sales, service and parts operations during the customary business hours of the trade in Dealer's area for five (5) or more consecutive business days, unless such failure is caused by circumstances beyond the reasonable control of Dealer, as more fully described in Article 3.11 hereof;

(j) Dealer's refusal or inability to pay any amount owed by Dealer to Maserati or any of its corporate affiliates after demand for such payment has been made to Dealer;

(k) Failure by Dealer to pay for Maserati Products in accordance with the terms and conditions of sale and failure to establish or to comply with the reasonable Capital and Operating Standards established from time to time by Maserati;

(l) Any circumstances, events or conditions that would, in the reasonable judgment of Maserati, result in an uninsured material adverse change or impairment to Dealer's financial condition, assets or business considered as a whole.

(m) Within the limitations, if any, of the supply of Maserati Vehicles made available to Dealer by Maserati, failure by Dealer to achieve such reasonable sales objectives as may from time to time be established by Maserati;

(n) Failure by Dealer to achieve such customer satisfaction results as may from time to time be established by Maserati in the exercise of its reasonable business judgment;

(o) Grossly negligent or willful conduct on the part of Dealer or any of the persons specified in Article D of the Dealer Agreement that Maserati determines, in the reasonable exercise of its business judgment, to be harmful to the goodwill of Maserati S.p.A. or Maserati, the reputation of Maserati Products, Maserati Trademarks or the marketing of Maserati Products;

(p) Failure by Dealer to maintain warranty records in accordance with Maserati's warranty policies and

21

procedures, it being recognized by both parties that such records are vital to the processing and substantiation of warranty claims submitted by Dealer to Maserati;

(q) Failure by Dealer to hold and maintain Deposits in accordance with Maserati's instructions or to promptly pay off loans on any trade-in vehicles, as provided in Article 7.3 hereof;

(r) Importation, distribution or sale by Dealer of Maserati vehicles then currently in production which are not originally manufactured or designed for use in North America or the sale of current model or new Maserati vehicles for resale or use outside North America or other violation of any Maserati export policy established by Maserati from time to time;

(s) Failure by Dealer to furnish sales or financial information in a timely manner, to permit Maserati to examine or audit Dealer's accounts and records or to monitor Dealer's operations as provided for herein.

(t) Failure by Dealer to take any actions pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, the Consumer Product Safety Act, the Magnuson-Moss Warranty Act, repair or replace legislation or "Lemon Laws," or any other legislation or regulation pertaining to safety, air pollution, noise control, or warranties to consumers which may be required of automobile dealers or which Maserati may request in implementing any action undertaken by Maserati or Maserati S.p.A.;

(u) Any breach or violation of any material obligation contained in the Agreement or in any Performance Agreement or in connection with any transaction between Maserati and Dealer, or any material failure by Dealer to comply with a requirement established by Maserati and communicated to Dealer in accordance with this Agreement;

(v) Any use by Dealer of the Dealership Facilities for any purpose other than those approved by Maserati;

(w) Any default by Dealer in the performance of any material obligation, covenant, term or condition of any agreement between Dealer and any affiliate of Maserati; or

(x) Any change, modification, repeal or addition of any applicable federal, state, provincial or local law, regulation, or license which would create an undue hardship on Maserati in the performance of its obligations under the terms of this Agreement.

(y) Failure by Dealer to secure or maintain any license or other governmental authorization necessary to operate as an authorized Maserati Dealer.

14.6   Termination for Death or Disability of Owner or Dealer Operator.  Except as provided in Article 15 hereof, the death and permanent disability of any of Dealer's Owners holding a majority or controlling interest in Dealer or the death or permanent disability of a Dealer Operator (such that the Dealer Owner or Dealer Operator can no longer perform his or her duties and obligations under this Agreement), may, at Maserati's option, result in the termination of this Agreement, upon written notice by Maserati to the Dealer. Maserati shall provide such notice within a reasonable time after such death or permanent disability. Termination hereunder shall be effective one hundred-twenty (120) days after the date of such notice or on such notice as may be provided for under applicable law.

14.7   Termination for Failure to Enter into or Fulfill the Terms of a Performance Agreement.  If Maserati determines that Dealer has failed to provide adequate Dealership Facilities, in accordance with the standards set forth in this Agreement, Maserati will advise Dealer of such failure and attempt to discuss such failure with Dealer. Thereafter, Maserati shall notify Dealer in writing of the nature of the failure, of the acceptable remedy and of the period of time (not less than six months) during which Dealer will be expected to remedy the failure. If Dealer refuses to enter into a Performance Agreement acceptable to Maserati with respect to those failures identified in Maserati's notice or fails to substantially remedy such failures at the end of the period provided for in such notice or Performance Agreement, Maserati may terminate this Agreement immediately, except to the extent a greater notice and/or cure period is required by any applicable law.

22

FNA0000037

## ARTICLE 15 – RIGHT OF SUCCESSION

15.1  <u>Continuation of this Agreement Upon Death or Permanent Disability.</u>  Notwithstanding the right of Maserati to terminate this Agreement upon death or permanent disability of Dealer's Owners or a Dealer Operator as set forth in Article 14.6 above, Maserati will not terminate this Agreement solely as a result of such death or permanent disability if:

(a) The surviving owners, officers or Dealer Operator listed in Article D of the Dealer Agreement remain unchanged and can in the opinion of Maserati, comply with the requirements imposed upon Dealer by this Agreement; or

(b) Within the one hundred-twenty (120) day notice period referred to above, or such reasonable time as circumstances may require and Maserati may approve, arrangements are completed for the assumption of active management and/or ownership of Dealer by persons satisfactory to Maserati;

(c) Maserati has previously approved a Designated Successor for the deceased owner, officer or Dealer Operator in accordance with procedures established by Maserati from time to time; or

(d) If the terms set forth in Article 15.3 are satisfied.

Subject to the foregoing, Maserati reserves the right to terminate this Agreement pursuant to Article 14 of this Agreement.

15.2  <u>Successor Nominee.</u>

(a) Reference to Article 15.1(c) hereof, and prior to the death or disability of the Dealer Owner, Dealer may, in accordance with procedures established by Maserati from time to time, nominate a Successor Nominee. Dealer may also, in accordance with such procedures, cancel a Successor Nominee by providing notice to Maserati that it intends to amend the Dealer Agreement to delete and/or substitute a new Successor Nominee. The request to name or to cancel a Successor Nominee must be executed by all Dealer's Owners and be received by Maserati prior to such death or permanent disability. In the case of a Successor Nominee, any proposed Dealer Owner(s) must be acceptable to Maserati.

(b) In the case of cancellation of a Successor Nominee, Maserati agrees to delete the name of the party listed as Designated Successor upon the receipt of that notice. If, due to changed circumstances, Maserati believes or has a reasonable basis to believe the Successor Nominee is or should be disqualified, Maserati will notify Dealer that the proposed owner is no longer acceptable and a substitute Successor Nominee will then be designated.

(c) If Maserati has notified Dealer Owners in writing before the death or permanent disability of such owners that Maserati does not plan to continue to have a dealer at Dealer's location, Maserati shall have no obligation to approve a Successor Nominee.

15.3  <u>Successor to Dealer in Event of Death.</u>  In the event of the death of any of the Dealer's Owners, if the beneficial ownership interest in Dealer passes directly to the surviving spouse and/or family member (as defined in Article 15.4), Maserati shall not terminate the Agreement if, within ninety (90) days after the death of such Owner, arrangements are completed for the assumption or continuation of the duties (if any) of such Owner by a Dealer Owner or Dealer Operator reasonably acceptable to Maserati. Upon such acceptance, in writing, by Maserati of a continuing or substitute Dealer Owner or Dealer Operator, Dealer and Maserati shall enter into a twelve (12) month interim agreement, provided that Dealer is otherwise in compliance with all the material terms of this Agreement. Prior to the expiration of such interim agreement and after completion of Maserati's evaluation of the performance of the Dealer Operator during such period, Maserati will review with Dealer the changes, if any, in the Dealer Operator or ownership of Dealer required by Maserati as a condition to entering into a new agreement with Dealer. Provided such conditions are satisfied, Maserati and Dealer will then enter into an agreement in substantially the same form as the standard agreement then currently offered by Maserati to its other authorized dealers.

Notwithstanding the foregoing, if, prior to the death of any Owner, notice of termination has been provided by Maserati to the Dealer in accordance with the provisions of this Agreement, no right of succession shall exist and the Agreement will terminate in accordance with the terms of said notice. Additionally, nothing in this Article 15 shall prevent Maserati from terminating this Agreement pursuant to Article 14 of this Agreement.

23

FNA0000038

15.4 <u>Succession and Maserati's Right of First Refusal.</u>  Notwithstanding Maserati's right to exercise its Right of First Refusal in accordance with Article 5.7, Maserati agrees that it will not exercise such right if Dealer or any of Dealer's Owners propose(s) to sell or otherwise transfer any of its/their Maserati retail business to an immediate family member (father, mother, brother, sister, son, daughter, grandson, granddaughter, or spouse of any of these) who has been previously approved as a Designated Successor by Maserati in accordance with Article 15.1(c) and provided such immediate family member (or his or her corporate designee) satisfies all of the requirements then in effect for appointment as an authorized Maserati dealer.

## ARTICLE 16 – BUSINESS RELATIONS AFTER TERMINATION

Any business relations of any nature whatsoever between Maserati and Dealer after termination of this Agreement shall not operate to revoke the termination of this Agreement. Nevertheless, all such business relations, so long as they are continued, shall be governed by terms identical with the provisions of this Agreement.

## ARTICLE 17 – RIGHTS AND OBLIGATIONS UPON TERMINATION OF AGREEMENT

17.1 <u>Purchase of Dealer's Inventory of Maserati Products by Maserati.</u>  Upon termination of this Agreement by either party, Maserati may, at its option, repurchase from Dealer the following assets only, free and clear of any liens or encumbrances:

(a) All new, unused and unsold Maserati Vehicles of the then current model year bought by Dealer from Maserati which are in first-class, salable condition and all new, unused and unsold Maserati Vehicles of the preceding model year if acquired by Dealer from Maserati within six months of the termination of this Agreement, for which Maserati will pay Dealer the net price paid by Dealer for such vehicles, less a deduction for any damage and less any applicable rebates or allowances paid by Maserati with respect to such vehicle;

(b) All new, unused, undamaged and unsold Genuine Maserati Parts still in their original packaging (i) which Dealer purchased from Maserati during the 12-month period preceding the effective date of termination of the Agreement (the "Matching Period") and (ii) which Dealer purchased from Maserati prior to the Matching Period, but which Maserati is then selling and can reasonably expect to sell to dealers in the future. Maserati will pay Dealer for those eligible parts actually returned to it under this provision the stock price then last established by Maserati for the sale of identical parts, less all prior refunds or allowances made by Maserati with respect thereto and less a fifteen percent (15%) handling charge;

(c) Maserati Signs which the Dealer purchased from Maserati or from a supplier approved by Maserati. Maserati will pay for such Maserati Signs, Dealer's original purchase price for such signs, less "straight-line" depreciation computed on the basis of a useful life of five years from the date of purchase and subject to adjustments based on use and condition;

(d) Special tools and equipment purchased by Dealer from Maserati during the Matching Period in accordance with any required tools and equipment list issued by Maserati. Maserati will pay for such special tools and equipment Dealer's original purchase price therefor, less "straight-line" depreciation computed on the basis of a useful life of five years from the date of purchase and subject to adjustments based on use and condition, but in no event less than 25% of the original purchase price therefor; and

(e) Dealer shall be responsible for returning to Maserati, on a freight prepaid basis, any assets which Maserati has agreed to repurchase from Dealer in accordance with the terms of this Agreement.

17.2 <u>Absence of Liens.</u>  Maserati may require and Dealer commits to supply proof that any Maserati Products eligible for repurchase in accordance with the terms and conditions of Article 17.1 are free and clear of any liens or encumbrances.

FNA0000039

17.3 <u>Delivery; Right to Take Inventory; Right of Offset.</u> Any and all items to be sold by Dealer to Maserati pursuant to the provision of Article 17.1, shall be delivered by Dealer to Maserati, in first-class, salable condition, at Dealer's place of business in suitable condition and, except with respect to Maserati Vehicles, packed at Dealer's expense for transportation. As a condition precedent to the purchase by Maserati of any Maserati Vehicle, Genuine Maserati Parts, Maserati Signs, special tools or equipment, Dealer shall grant to Maserati and its designee or designees, at such time and for such periods of time as Maserati reasonably shall determine, the right to enter the Dealer's premises for the purpose of taking an inventory of all or any part of Dealer's stock of Maserati Vehicles, Genuine Maserati Parts, and special tools and equipment. At the request of Maserati the Dealer shall comply in all respects with the provisions of all applicable bulk sales acts or similar statutes protecting a transferee of personal property with respect to liabilities of the transferor. In making payments in accordance with this Article, Maserati reserves the right to:

(a) Set-off the amount due Dealer against any amounts which may be due to Maserati or to any of its affiliates from Dealer;

(b) Pay any financial institution retaining a security interest in any of the property to be repurchased such sums as are necessary to obtain a good, unencumbered, and marketable title to the property being repurchased by Maserati;

(c) Pay any claimant, in accordance with any applicable statute, such sums as may be necessary to acquire a good, unencumbered, and marketable title free of any interest, right, or claim of such claimant to the property being repurchased by Maserati.

17.4 <u>Customer Files and Product Literature.</u> Upon the expiration or prior termination of this Agreement, and as a condition precedent to Maserati's obligations assumed by Maserati under Article 17.1 hereof, Dealer shall immediately do the following:

(a) Transfer to Maserati, or Maserati's designee or designees, all of its warranty files and files of prospective customers for Maserati Products, or complete copies (including but not limited to paper and computerized or electronic copies) of all such files;

(b) Provide Maserati (in electronic format, if requested) with all records and files relating to inventory, sales and customer services, including but not limited to, the names and addresses of all customers who purchased Maserati Vehicles from or by Dealer or have been placed on a customer waiting list by Dealer, and the service records of all service customers for the five-year period prior to the expiration or prior termination of this Agreement; and

(c) Deliver to Maserati at Maserati's place of business, or to Maserati's designee or designees, at a price to be agreed upon between Maserati and Dealer but in no case more than the purchase price, any and all technical or service literature, advertising and other printed material relating to Maserati Products then in Dealer's possession which were acquired or obtained by Dealer from Maserati, such as, for example, sales instruction and service manuals and promotional materials.

None of the foregoing shall result in any liability of Maserati to Dealer for damages, commissions, loss of profits or compensation for services, or in any other liability of Maserati to Dealer of any kind or nature whatsoever.

17.5 <u>Mutual Release and Termination.</u> Upon termination of this Agreement by either party or at the closing of any transaction entered into and approved pursuant to Article 5.2 hereof, Maserati and Dealer shall execute and deliver to each other the form of Mutual Release and Termination Agreement then in use by Maserati. Said Mutual Release and Termination Agreement (i) shall unconditionally terminate the Dealer Agreement then in force between Maserati and Dealer and (ii) shall provide for the mutual release by each of the parties hereto of any and all claims either may have against the other, excepting only such claims as are then known to and pending between Maserati and Dealer and which are expressly set forth and specified in said Mutual Release and Termination Agreement. Termination of this Agreement shall not release Dealer, however, from the obligation to pay any sum which may be then owing Maserati, nor shall any termination release either party from its defense and indemnity obligations set forth in Article 13 of this Agreement.

FNA0000040

## ARTICLE 18 -- MISCELLANEOUS PROVISIONS

18.1 <u>Notice of Failure to Act in Good Faith.</u> In the interest of maintaining a harmonious relationship between Maserati and Dealer, Dealer shall report promptly, in writing, to an Executive Officer of Maserati any act or failure to act on the part of Maserati which Dealer deems not to have been, or that Dealer proposes to use in support of a claim that Maserati has not acted, in good faith towards Dealer. It is the intention of the parties that the purpose of the requirement of such notification by Dealer is to afford Maserati sufficient opportunity to consider the claim of Dealer and if Maserati, in the exercise of its reasonable business judgment, such claim is found to be meritorious, to undertake such measures which may be necessary to correct the condition complained of without resorting to litigation.

18.2 <u>No Oral Agreements or Modifications.</u> Dealer understands and acknowledges that this Agreement and any Performance Agreement, and any modifications or amendments thereto or any notice of prior termination of this Agreement, shall be effective only if signed by an Executive Officer of Maserati or his duly authorized agent. Except as provided for in the preceding sentence, no contracts, agreements, representations, understandings, arrangements, modifications or amendments of any kind (whether oral or otherwise) with respect to this Agreement will be binding upon Maserati. Dealer expressly acknowledges and agrees that it has not, in entering into this Agreement, and will not in the future, rely on any oral representation made by any officer, employee, representative or agent of Maserati and further acknowledges and agrees that Maserati is not bound by or responsible for any damages arising out of such oral representation.

18.3 <u>Entire Agreement.</u> This Agreement contains the entire integrated agreement between the parties, except with respect to any Performance Agreement(s) between the parties which is/are expressly made a part thereof. No representations or statements, other than those expressly set forth herein, whether written or oral, were relied upon by Maserati or Dealer in entering into this Agreement. Maserati S.p.A. is not a party to this Agreement.

18.4 <u>Assignment of Agreement.</u> This Agreement, or any part thereof or interest therein, may not be transferred or assigned by the Dealer. Maserati may assign this Agreement and any rights, or delegate any obligations, hereunder to any affiliate or successor company and will provide notice of such assignment or delegation to Dealer.

18.5 <u>Third Party Beneficiaries.</u> This Agreement is made solely by and between Maserati and Dealer and neither confers upon, nor shall be deemed to confer upon, any person not a party hereto any third party rights or benefits of any kind.

18.6 <u>Dealer is Not an Agent of Maserati.</u> Except as otherwise expressly provided herein, nothing herein shall be deemed to make Dealer an agent for Maserati in any respect, nor is Dealer authorized to transact any business or to incur any obligations or liability on behalf of Maserati.

18.7 <u>Notices.</u> Any notices under, or pursuant to, the provisions of this Agreement shall be directed to the respective addresses of the parties stated in the Dealer Agreement or, if either of the parties shall have specified another address by notice in writing to the other party, to the address so specified and shall be delivered personally, sent by hand delivery, facsimile transmission (upon notification to Owner or Dealer Operator of Maserati's intention to send such transmission, with a confirmation copy sent by another means specified in this Article) or sent by certified or overnight mail, postage prepaid by a reputable courier service. Any such notice shall be deemed given when so delivered personally or sent by facsimile transmission, or, if mailed, five days after the date of deposit in the United States mail, or, if by overnight mail, DHL, Federal Express or other reputable comparable courier, 24-hours after timely delivery to the carrier. The parties shall advise each other forthwith, in writing, of any change of such address.

18.8 <u>Waivers.</u> Except as otherwise provided for in this Agreement, the failure of either party at any time to require performance by the other party of any provision hereof shall in no way affect the full right to require such performance at any time thereafter, nor shall the waiver by either party of a breach of any provision hereof constitute a waiver of any succeeding breach of the same or any other such provision, nor constitute a waiver of the provision itself.

26

FNA0000041

18.9  Severability.  If any provision of this Agreement should be held (after exhaustion of all rights of appeal) invalid or unenforceable for any reason whatsoever or in violation of any law of the United States of America, the District of Columbia, any state of the United States or province of Canada, this Agreement shall be considered severable as to such provision; and such provision shall be deemed deleted from this Agreement or, in the event that it should be held to violate only the laws of the District of Columbia, any state of the United States or province of Canada, to be inapplicable within the territory thereof; and the remainder of this Agreement shall be valid and binding as if such provision were not included herein or as if it were included herein only with respect to territories outside of such District or state, as the case may be.

18.10  Choice of Law; Dispute Resolution; Arbitration; Jurisdiction.  Dealer and Maserati recognize that certain disputes may arise between them as to the application and interpretation of this Agreement, Maserati policies, and the other documents referenced in this Agreement.  While understanding that certain federal, state, and provincial courts and agencies may be available to resolve such disputes, Dealer and Maserati agree that it is in their mutual best interest, and in the spirit of this Agreement, to attempt in the first instance to resolve any and all disputes arising out of or concerning any notice by Maserati to Dealer (i) of Maserati's intention to establish or relocate an authorized Maserati Dealer, as described in Article 7.4, or (ii) of Maserati's intention to terminate Dealer's Agreement as described in Article 14, through mediation as described in Article 18.10(a).  If any such dispute remains unresolved to the mutual satisfaction of Dealer and Maserati after such mediation the parties agree to submit any such dispute to binding arbitration in accordance with Article 18.10(c).  Each party agrees to pay its own fees, costs and expenses associated with such mediation or arbitration.

(a)  Non-Binding Mediation.  Prior to initiating any arbitration as provided in Article 18.10(c), Maserati and Dealer agree to non-binding mediation of any dispute of a nature described in the immediately preceding paragraph.  Mediation shall be held at Maserati's headquarters, or at another mutually agreed upon location, and shall begin within thirty (30) days after receipt by Dealer of notice (i) invoking this Article 18.10 (a); and (ii) clearly specifying the nature of the dispute.  Mediation may be binding, but only if first agreed to in writing by Dealer and Maserati.  Any mediation under this Article 18.10(a) shall be conducted before a mediation panel (the "Mediation Panel"), and shall be chosen by Maserati and Dealer at least ten (10) days before such mediation is scheduled to begin.

(b)  Mediation Panel.  The Mediation Panel shall consist of; (i) two members of Maserati management, chosen by Maserati, (ii) two Dealer mediators, chosen by Dealer, neither of which shall be located in an RMA contiguous to Dealer; and (iii) one member chosen by the members identified in (i) and (ii).  Within twenty (20) days of hearing the dispute, the Mediation Panel shall recommend, in writing, a resolution of the dispute to Dealer and Maserati.  The parties agree that a majority vote of the Mediation Panel shall be deemed to be the final recommendation of the Mediation Panel.  Each party shall have five (5) business days to accept or reject the Mediation Panel's solution, in its entirety.

(c)  Arbitration.  Within ten (10) days of receipt of the final recommendation of the Mediation Panel, either party may, if dissatisfied with the recommendation of the Mediation Panel (unless the parties agreed to be bound by the recommendation of the Mediation Panel), file a written request for arbitration, together with the appropriate arbitration fee, with the American Arbitration Association, in its location closest to the Dealer's retail facility, which shall be the place of arbitration, and shall be submitted to arbitration in the following manner:

(i)  The arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association before a single arbitrator selected in accordance with such rules, who shall apply the laws of the jurisdiction in which Dealer is located.

(ii)  If the arbitrator finds that Maserati properly terminated this Agreement, the termination shall become effective as of the date of the arbitrator's award to the extent that such termination has not already taken effect.  If the arbitrator finds that the termination was not justified, Maserati's notice of termination shall be wholly void, and the parties hereto shall continue their business as though no notice of termination had been served.

27

(iii) If the arbitrator finds that Maserati's decision to approve the relocation of a Maserati dealer, or to establish an additional Maserati dealer was proper, such relocation or establishment shall become effective as of the date of the arbitrator's award. If the arbitrator finds that the relocation or establishment was not proper, Maserati's notice of such relocation or establishment shall be wholly void, and the parties hereto shall continue their business as though no notice of relocation or establishment had been served.

(iv) If after termination, Dealer asserts any claim under statutes governing the relationship between automobile dealers and distributors, and such claim is required to be heard in court, it shall be heard in the United States District Court having jurisdiction over the matter in the venue in which Dealer is located, and each party hereto agrees to submit to the jurisdiction of said court for these purposes, and EACH PARTY HEREBY WAIVES A RIGHT TO TRIAL BY JURY IN CONNECTION WITH A TRIAL OF ANY SUCH CLAIMS.

18.11  **Withdrawal or Suspension of Supply of Maserati Vehicles.** Nothing in this Agreement shall give Dealer the right to continue to be supplied by Maserati with the Maserati Vehicle line or any particular Maserati Vehicle models, which may at any time be withdrawn or suspended from importation and sale in North America, without any obligation or liability on the part of Maserati by reason thereof. Nothing in this Agreement shall give Dealer the right to sell any vehicle line, distributed by Maserati or any successor of Maserati, other than Maserati Vehicles.

18.12  **Maserati's Security Interest.** As security for full payment of all sums Dealer owes to Maserati under this Agreement, whether such sums are now, or subsequently become due and owing, and as security for Dealer's performance under this Agreement, Dealer grants to Maserati, subject to any prior perfected secured creditor's interest, a security interest in all of Dealer's Maserati Products, including the proceeds from sales or insurance, and all liens. Upon any non-payment or default, Maserati may accelerate any then existing debt and shall have all applicable rights, including, without limitation, those specified in the Uniform Commercial Code. If Maserati requests, Dealer agrees to perfect Maserati's security interest. Maserati may assign the security interest granted to it under this Agreement and, upon notifying the Dealer, the assignee shall be entitled to the full performance of the covenants, rights and remedies contained in this Agreement relating to the security interest and the Collateral assigned. Dealer will not assert any claim, defenses or offsets against the assignee that it may have against Maserati.

18.13  **Anti-Theft Labels.** Dealer acknowledges and understands that Federal law requires manufacturers of motor vehicles sold in the United States to affix to designated items of original equipment, and replacement parts for such equipment, labels containing certain identifying information ("anti-theft labels"). In certain cases, the manufacturer of Maserati Vehicles places a transparent paint mask over such anti-theft labels. Dealer will, when performing any service or repair work (such as painting or rust proofing) insure that such anti-theft labels are neither obliterated nor obscured and will remove any protective paint masks prior to delivering or returning a Maserati Vehicle to a customer.

18.14  **Time of the Essence.** Except as otherwise specifically provided for herein, the parties agree that with respect to all actions and obligations required or imposed by this Agreement time is of the essence.

18.15  **Information Maintained in Electronic Form.** Notwithstanding any of the provisions contained in this Agreement to the contrary, Dealer shall have no obligation to provide Maserati with access to any documents, records or other information in electronic form, unless Dealer, in the ordinary course of its business, maintains such documents, records and information in electronic form.

FNA0000043

IN WITNESS WHEREOF, Maserati and Dealer have signed and executed this Dealer Retail Sales & Service Agreement and Standard Provisions as of the day and year first above written.

**MASERATI NORTH AMERICA, INC.**

Signature: _____

Print Name: _Maurizio Parlato_

Title: _President & CEO_


**DEALER:**

_St. Louis Motorsports_
(Formal Name of Dealer)

_Maserati St. Louis_
(D/B/A)


The undersigned, an authorized representative with capacity to bind Dealer, hereby executes this Agreement on behalf of Dealer.

Signature: _____

Print Name: _James N. Mills_

Title: _Chairman / Co-Principal_


Signature: _____

Print Name: _Graham Hill_

Title: _President / Co-principal_

29

FNA0000044